[Crim. No. 1115.   Fourth Dist.   July 20, 1956.]

THE PEOPLE, Respondent, v. JAMES ROSCOE
HAMILTON, Appellant.

Vernon R. Hamilton and Peter H. Stevens for Appellant.

Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged in Count I of an information with receiving stolen property on or about December 11, 1954, in violation of section 496 of the Penal Code. In Count II he was charged with the same crime, alleged to have been committed on or about December 15, 1954. A jury found him guilty on both counts and he was sentenced to imprisonment on each count, the two sentences to run concurrently. He has appealed from the judgment and from an order denying his motion for a new trial.

The evidence discloses the following facts. On the night of December 8, 1954, one Pilcher and one Freeman broke into a market in Upland and stole some adding machines and cash registers. Later that night they entered an oil station in Ontario and stole an adding machine and a battery. These articles were then stored in a shack at a certain address in Ontario. On December 10, 1954, Freeman and Pilcher broke into a television store in Ontario and stole a television set, some radios, and a cash register. These articles were also stored in the same shack in Ontario.

A day or two later, the defendant first met Pilcher and Freeman at a house in front of the shack where these articles were stored. Pilcher or Freeman asked the defendant whether he wanted to buy "this" property, and the defendant said "Yes." After examining the property in the shack the defendant offered $200 "for the stuff," which was accepted. It was agreed the property was to be taken up to the foothills where the defendant was to come and receive it. Later that evening the defendant met Pilcher and Freeman in the foothills and the property was taken out of their car and loaded into defendant's pickup truck, and the purchase price was paid.

With respect to Count II, the evidence shows that about 3 a.m. on December 15, 1954, Pilcher and Freeman broke into a furniture store in Ontario and took a television set, some radios, and some electric drills. Prior to breaking into this furniture store Pilcher and Freeman had visited that store and had a salesman show them television sets and radios in

order to ascertain which were the best sets. After thus "casing" this store Pilcher and Freeman asked the defendant what articles he wished to buy, and he replied that he wanted radios, televisions and electric tools. The articles taken from the furniture store were taken to "the mountains" and hidden in the brush. Three days later Freeman took some of these articles, including a television set, a typewriter and a radio to the defendant's house and asked the defendant if he wanted to buy it. The defendant looked at the articles and bought them for $75. On December 30, 1954, two officers went to the defendant's home and the defendant's uncle, who had been left in charge, gave them permission to enter. The officers found there a red plastic Zenith radio which Pilcher later identified as being the same type as seven or eight such radios which they had stolen from the furniture store. When an officer asked the defendant on January 5, whether he had received stolen property he stated that he did not wish to make any statement until he had seen his attorney. When told that the officers had recovered a stolen radio from his home and asked if he would be willing to state how he came into possession of that radio the defendant said "No." When told that the officers had a strand of hair from one of the stolen articles the defendant declined to let the officer take a hair from his head for the purpose of comparison.

The defendant took the stand and testified that Pilcher approached him about buying this property but that he had stated he could not use it. He denied that he had gone into the foothills to meet Pilcher or Freeman; denied that he had received any stolen property or agreed to buy any property from either of these men; denied that he had had any stolen property in his possession; stated that he had not at any time knowingly received any stolen property from either Freeman or Pilcher; and stated that on December 16 he purchased the radio which was found in his home for $10 from a stranger in the parking lot of a store in Ontario.

■ The appellant first contends that the court erred in failing to instruct the jury, on its own motion, that the testimony of any witness purporting to relate an oral admission of the defendant should be viewed with caution. It is argued that the testimony of the persons who stole this property contains such admissions. In the evidence pointed out these witnesses stated with reference to the sale of the property to the defendant that the defendant said he would buy it, that he said he would give $200 for it, that he stated what articles

he wanted to buy, and that in between the two deals when one of these witnesses asked whether an adding machine in defendant's house was the one the witness had sold him the witness replied that it was. This was a part of the evidence in connection with the sale of the property and no admissions appear in the sense that the defendant later made statements to outside parties which tended to admit his guilt. Moreover, the court did instruct the jury that the testimony of an accomplice should be viewed with distrust. Any error appearing in this connection cannot be held, under the facts of this case, to have been sufficiently prejudicial to justify a reversal. (*People* v. *Koenig,* 29 Cal.2d 87 [173 P.2d 1].)

It is next contended that the court erred in instructing the jury that actual and positive knowledge of the stolen character of goods is unnecessary. It is argued that this instruction was taken from *People* v. *Juehling,* 10 Cal.App. 2d 527 [52 P.2d 520], but was removed from the context and had the effect of confusing the requirement of knowledge and the basis upon which knowledge may be found. The instruction reads as follows:

"The prosecution has the burden of proving guilty knowledge of the recipient of stolen property, but actual and positive knowledge is unnecessary and the requirement as to guilty knowledge may be met by evidence from which the element of guilty knowledge properly may be inferred."

The court also instructed the jury that "Every person who receives any property which has been stolen, knowing the same to have been so stolen, is guilty of a felony," and "If a defendant received property which had been stolen, then in determining whether or not at the time he received such property from the owner, he had knowledge that the property had been stolen, you may consider all the facts in evidence and every reasonable inference that may be drawn from such facts." It clearly appears that in the portion of the instruction complained of the court was merely differentiating between direct evidence and inferences from other circumstances. The jury was sufficiently instructed in this regard and no prejudice appears.

It is contended that the court erred in failing to instruct the jury that the witnesses Pilcher and Freeman were accomplices of the defendant, as a matter of law, with respect to Count I of the information. It is argued that these witnesses aided and abetted the commission of this offense and were accomplices as defined in Penal Code, section 1111. While

it is admitted that there are "innumerable authorities" stating that the thief is not the accomplice of the receiver it is argued that such cases fail to give proper consideration to the 1915 amendment to section 1111, and that the entire question should now be reexamined.  ██  It is sufficiently settled that the thief and the receiver of stolen property are guilty of separate and distinct offenses, and are not accomplices of each other except where there is a prearranged plan whereby one is to steal and the other is to buy. (*People* v. *Raven,* 44 Cal.2d 523 [282 P.2d 866].)

It is next contended that the court erred in failing to instruct the jury that Pilcher and Freeman were accomplices of the defendant, as a matter of law, with respect to the offense alleged in Count II. Reliance is placed on Pilcher's testimony that after he and Freeman went to the furniture store on the evening of December 14, and before they broke into the furniture store, they asked the defendant what they could sell to him and he replied that he would buy radios, television sets and electric tools. However, Freeman testified that he heard this conversation and nothing was said that he could specify. He also testified that after this robbery they took some of the property taken to the defendant and asked him if he wanted to buy it. The evidence was sufficient to justify the court in leaving the question as to whether these parties were accomplices to the jury, as a matter of fact.  ██  In any event, the testimony of Pilcher and Freeman was sufficiently corroborated by defendant's refusal to answer when asked by an officer if he did receive any stolen property, and his saying that he would make no statement until he had seen his lawyer; by the defendant's testimony that Holmes, a man working with Pilcher and Freeman, had left money in an envelope on top of defendant's television set; by defendant's refusal to let the officer remove a strand of hair for comparison, saying he wanted to see his attorney first; by the defendant's refusal, when first asked by the officer, to tell how he came into possession of the radio found in his home; by his later unsatisfactory claim that he had bought it from a stranger the day after it was stolen (*People* v. *Wayne,* 41 Cal.2d 814 [264 P.2d 547]) ; and by his possession of a radio itself, and defendant's entire conduct under the circumstances. (*People* v. *Coakley,* 108 Cal.App.2d 223 [238 P.2d 633] ; *People* v. *MacEwing,* 45 Cal.2d 218 [288 P.2d 257].) What has already been said sufficiently disposes

of a further contention that the witness Holmes was an accomplice as a matter of law. The question as to whether these witnesses were accomplices was left to the jury, under proper instructions.

It is next contended that the court erred in failing to give an instruction, as requested, to the effect that a conviction may not be had upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense, defining an accomplice, and stating that whether or not any witness was an accomplice was for the jury to determine from all of the testimony and all of the circumstances. The court gave another instruction containing the exact language of the refused instruction in its entirety, to which was added a paragraph telling the jury that if it should find that the witnesses were operating under a preconceived plan with the defendant to commit a burglary and have the defendant receive the property stolen in such burglary, then such witnesses are accomplices and must be corroborated.

It is next contended that the court erred in permitting the district attorney to question the defendant as to a conversation between the defendant and an attorney consulted by him. When a question was asked of the defendant as to such a conversation an objection was sustained. Later, the court permitted the district attorney to ask whether a certain conversation with this attorney had not been had. The defendant denied that he had had such a conversation. Still later, the court reversed his ruling, sustained the objection, and ordered the answer stricken on the ground that the matter was privileged. The court thereafter instructed the jury not to consider any evidence which had been stricken. There is no merit to the contention now made that the court did not "specifically admonish the jury" with regard to this particular testimony, and no prejudice appears.

It is next contended that the court erred in overruling an objection to a conversation between a witness and law enforcement officers. This witness was an attorney who had been consulted by the defendant but who did not represent him at the trial. It was brought out that this witness had called the officers on December 31 asking if the defendant was wanted, and then asking that the warrant not be served until after New Year's Day. In this connection it is also contended that the district attorney committed prejudicial

misconduct in thus attempting to bring out privileged communications. The question was objected to on the ground that it was hearsay and not on the ground of privilege. No prejudicial misconduct appears since it could not be known in advance whether or not the privilege would be claimed or waived. Under the circumstances, it cannot be held that reversible error appears. (Const., art. VI, § 4½.)

■ It is next contended that the court erred in overruling an objection to a question asked of the witness Freeman as to whether he had at a certain time had a conversation with Holmes relative to money. This question was asked in rebuttal for the purpose of rebutting the defendant's testimony that he had not been given any money by Holmes to give to Freeman. Holmes had previously testified that he gave defendant money for that purpose, and Freeman had testified that the defendant gave him the money. The court was not asked to instruct the jury that the evidence was received for the limited purpose of impeachment. The evidence was admissible for that purpose and no reversible prejudice appears.

■ It is next contended that the court erred in giving an instruction with respect to the possession of stolen property, it being argued that this instruction implied that such property was found in the defendant's possession when no such evidence had been received. There was evidence that a radio was found in the defendant's house which was of the same type as a number of radios stolen from the furniture store. The defendant admitted that this radio was in his possession, and gave an explanation of how he acquired it which could hardly be considered satisfactory. Whether or not this radio was one of those taken from the furniture store, and whether the defendant's explanation of how it came into his possession was to be believed were questions of fact for the jury. The instruction was properly given under the circumstances.

■ Finally, it is contended that the court erred in failing to admonish the jury, as required by section 1122 of the Penal Code, on taking a recess at 11:02 a.m. on the first day of the trial. The clerk's transcript discloses that this recess was taken immediately after the jury had been selected and sworn. No evidence had been received and no possible prejudice could have resulted.

The evidence of the defendant's guilt was strong, and we

are far from convinced that any miscarriage of justice has occurred or that any errors which may appear could have affected the result.

The judgment and order appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.