[Crim. No. 6100.   Second Dist., Div. One.   Aug. 7, 1959.]

THE PEOPLE, Respondent, v. MELVIN JOSEPH CONERLY, Appellant.

Melvin Joseph Conerly, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

LILLIE, J.—Appellant Conerly and codefendant, George Henry Hilton, were jointly charged by amended information with burglary in violation of section 459, Penal Code, in that on or about May 2, 1957, they entered the Ewart Clothing Store with intent to commit theft. In addition, it alleged two prior felony convictions, to wit, burglary, which he admitted to be true. A jury found them guilty of burglary and fixed the crime in the first degree. Appellant's motion for new trial was denied, the offense was reduced to second degree and he was sentenced to the state prison. He appeals from the judgment and order denying his motion for a new trial.

The evidence viewed most favorably in support of the verdict of guilt discloses that the Ewart Clothing Store in Pomona, securely locked on the evening of May 1, 1957, was broken into and robbed of men's suits valued at $10,572.43, wholesale. The next morning, May 2d, about 8 a. m. the back door of the store was found unfastened, the bar of the lock having been chipped in two, and 400 suits from the racks and two stacks placed near the back door were missing. A hole had been chopped through the roof making an opening into the storage room.

In the early morning of May 2, 1957, Officers Julian and Burke, patrolling an alley in the rear of Ewart's store, observed a 1947 Chevrolet two-door sedan turn into it, proceed past Ewart's and turn north. They stopped it and found appellant driving the car with Hilton as his passenger. Appellant was wearing a light brown checked sports jacket and sport trousers. Officer Julian requested his operator's

license and asked him why he was in the alley, to which appellant replied they were looking for a friend but had apparently gotten lost. The officer noted the rear seat had been removed from the car, and asked him if he would open the trunk which he observed to be quite clean. Officer Burke asked codefendant Hilton where they were going, to which he responded that they were looking for a place called "Cookie's." The officers directed them to "Cookie's," drove behind them, waited, and later followed them until they left town.

About 2 p. m. on May 3, Harvey D. King, operating a dry cleaning business in Los Angeles under the name of Kay Dry Cleaners, had a conversation with Hilton at the shop regarding the purchase of suits. Hilton told him he had a "bunch" of suits, and King promised he would look at them that night. Thereafter, between 10 and 11 p. m. on the same day, appellant and Hilton, accompanied by a woman who remained in the car, brought the suits into the shop an arm load at a time. King checked the suits and found "they had Ewart's label, Ewarts, Pomona." The next morning appellant and Hilton returned to the shop and King paid them $2,550, which they both accepted and counted out together.

On the morning of May 2, Officer Whitehead, investigating the burglary, found certain clothing fibers clinging to portions of the wood at the point of entry into Ewart's store. On May 6 he called at appellant's home and in his closet found a jacket similar to the one he had worn when apprehended by police in Pomona on May 2, from which he took certain fibers. A laboratory test showed that the fibers found adhering to the point of entry were quite similar in color and characteristics to the fibers in the coat removed from appellant's home.

On May 7, at King's dry cleaning establishment and at two other places to which King directed him, Officer Whitehead recovered 158 or 159 suits, which were identified as belonging to and having been taken from Ewart's in Pomona.

In their defense, appellant and Hilton denied all knowledge of the burglary or that they sold any suits to King. They admitted they were in Pomona as testified to by the officers, but declared they were only looking for a "gambling joint."

As an alibi for May 3, Hilton testified that he, appellant, Mattie Bruce and one Bluford had been at a store in Colton around 8 p. m. and went from there to Riverside, arriving about 9 p. m. Appellant said he had been with Hilton but

parted from him at 9:30 p. m. when he went home, staying there the rest of the night; and from 8 a. m. to 11 a. m. the next day he had been with his mother in downtown San Bernardino. A shoe salesman testified he had sold appellant shoes at Colton around 8 p. m. Appellant's mother said that he had come home about 10 p. m. on May 3, stayed there the rest of that night and had been in town with her the next morning between 8 and 11 a. m.

The evidence further discloses that codefendant Hilton owned a 1950 Chevrolet convertible coupé, green with a black top, which he had not loaned to anyone on May 2, 3, 4 or 5. Appellant denied he told Officer Whitehead he had been to Kay's Dry Cleaners on May 3 in the 1950 Chevrolet convertible, but the officer testified he had asked him if he had, and appellant said "he had been there." Mrs. King testified that on May 3 around noon Hilton came to talk with her husband and she noticed a man seated in the car Hilton got out of, which was a beige or yellow convertible with no top, license number HPA 263. An automobile salesman testified that in March of 1957 he had sold to Hilton a green 1950 Chevrolet convertible with license number HPA 263.

Appellant claims that there was insufficient evidence to sustain the judgment of conviction and that the trial court erred in failing to instruct the jury that the testimony of an accomplice must be corroborated.

In advancing his first contention, appellant argues that King's testimony, at best, establishes only that appellant had possession of recently stolen property, which alone is insufficient to connect him with the commission of the crime of burglary (*People* v. *Howell,* 126 Cal.App.2d 780 [273 P.2d 79]) ; that there was no showing when the burglary was committed in relation to the time the officers observed appellant and Hilton in Pomona during the early morning hours of May 2, and mere presence in the vicinity on the same day a burglary has been committed does not constitute sufficient corroborative evidence of guilt; and that King was an accomplice and no conviction may be had upon his uncorroborated testimony.

Without here repeating the pertinent evidence, it is obvious from the record that, if believed by the trier of fact, there was ample substantial evidence to sustain the finding of the jury that there had been a burglary of Ewart's store on or about May 2, and appellant and codefendant Hilton had committed it. Although, as argued by appellant, it is

true that mere possession of goods recently stolen is not sufficient to sustain a conviction of theft or burglary, it is also the rule that unexplained possession of stolen property is a circumstance strongly indicating guilt (*People* v. *Jackson,* 146 Cal.App.2d 553 [303 P.2d 767]) and where this circumstance is found to exist, only slight other evidence is needed to support a judgment of conviction (*People* v. *Wiley,* 8 Cal. App.2d 135 [46 P.2d 817]). ▆▆▆ Appellant not only failed to explain his possession of the suits belonging to Ewart's but denied he had ever had them. However, the jury clearly believed the testimony of King that appellant and Hilton brought the suits to him shortly after the burglary and received money for them. Other incriminating evidence tending to show appellant's participation in the burglary relates to a jacket found in his home which yielded fibers similar in color and characteristics to those found adhering to the point of entry into Ewart's store and which jacket was similar to the one worn by him when observed by police in the vicinity of Ewart's on May 2; his presence in the near vicinity of the burglary driving a car in which the rear seat had been removed and the trunk was quite clean; the removal and transportation from the clothing store of a substantial number of suits; acceptance by appellant and Hilton of an inadequate price ($2,550) for the stolen goods valued at $10,572.43 wholesale (*People* v. *Buratti,* 96 Cal.App.2d 417 [215 P.2d 500]; *People* v. *Conrad,* 125 Cal.App.2d 184 [270 P.2d 31]); appellant's admission to officers he had been to Kay Dry Cleaners on May 3 in a 1950 Chevrolet convertible, together with proof that codefendant Hilton was there then and had gotten out of a 1950 Chevrolet convertible, license number HPA 263 which had previously been sold to him and in which was seated another man; and the testimony of a shoe salesman that he saw appellant in Colton at 8 p. m. on May 3 in the company of a man and woman, and that of King that two hours later he saw appellant in Los Angeles accompanied by a man (Hilton) and woman.

That the jury rejected as untrue the testimony of appellant, his codefendant and the defense witnesses, is clear from its verdict. It had the duty to weigh the evidence, resolve all factual conflicts and determine the credibility of witnesses; and apart from having observed them and listened to their testimony, the jury in evaluating the evidence without doubt considered other factors such as possible bias and relationship of their witnesses to appellant and codefendant Hilton. The

trier of fact accepted the testimony of the prosecuting witnesses as true, which evidence more than sustains the verdict, and rejected the defense version of what occurred. This court will not disturb the jury's implied findings of fact.

We likewise find to be without merit appellant's claim that the trial court erred in failing to instruct the jury that the testimony of an accomplice must be corroborated. Harvey D. King testified as a prosecution witness and appellant argues since he was an accomplice the jury should have been instructed ''on the law governing testimony of accomplices.'' The record before us does not disclose, in compliance with rule 33 (b) (1) (b), Rules on Appeal, what instructions were or were not given by the trial court. We can only assume, therefore, that appellant complains that the jury was not instructed in accordance with section 1111, Penal Code, that a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. We find no error of the trial court in failing to give such an instruction, for it is obvious from the record that King was not appellant's accomplice in the crime with which he was charged and of which he was convicted—burglary. Nothing in the evidence even hints to King's assistance in the burglary, help in planning it, or knowledge thereof before appellant and Hilton called at his shop between 2 and 3 p. m. on May 3 offering to sell him a ''bunch'' of suits. Even assuming King knew or should have realized they were stolen at the time he received the suits, this still would not constitute him an accomplice. A similar contention was made and rejected by the Supreme Court in *People* v. *Raven,* 44 Cal.2d 523 [282 P.2d 866], pointing out that section 1111 of the Penal Code defines an accomplice as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given. The court stated at page 526: ''It is settled that the thief and the one knowingly receiving stolen property from him are guilty of distinct and separate substantive offenses and are not accomplices of each other. (Citing cases.) An exception to the rule is recognized when the thief and the receiver conspire together in a prearranged plan whereby one is to steal and the other is to buy. (Citing cases.)'' The record before us does not justify the

conclusion that appellant and King entered into such a conspiracy, and accordingly no corroboration of the testimony of King was required (*People* v. *Hamilton,* 143 Cal.App.2d 305 [299 P.2d 716]; *People* v. *Conrad,* 125 Cal.App.2d 184 [270 P.2d 31]), and even assuming he received the suits knowing they had been stolen, he could not, under the rule in the Raven case, *supra,* be classed as an accomplice of appellant in the burglary. Thus no instruction regarding corroboration of the testimony of an accomplice was required.

For the foregoing reasons, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 28, 1959, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1959. White, J., did not participate therein.