[Crim. No. 3694.   Second Dist., Div. Three.   Aug. 20, 1943.]

THE PEOPLE, Respondent, v. JOHN L. JOLLET et al., Appellants.

John S. Cooper for Appellants.

Robert W. Kenny, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Respondent.

SHAW, J. pro tem.—The indictment against defendants contains two charges of grand theft and three of burglary. After a jury waiver and trial by the court, they were acquitted of

the burglary charged in count V and found guilty of all the other charges, and they appeal from the judgments and from the orders denying each of them a new trial. The only contention made on appeal is that the evidence is insufficient to support the findings of guilt. Facts set forth in the following statement are shown by evidence adduced by the prosecution, unless otherwise stated.

Counts I and II relate to a theft of two diamond rings from the Howes jewelry store, situated on the north side of Wilshire Boulevard in Los Angeles. The burglary charged in count II is the entry into that store with intent to commit theft. These rings were in a showcase near the front of the store and were close to the back corner of the case. Defendant Jollet came into the store about noon, asking to see some watch bands, and after talking with a clerk, Miss White, for 5 or 10 minutes, was turned over to the assistant manager, Mr. King. Jollet asked King about attachments for ladies'' watches, seemed much interested in what he saw, said his wife was across the street and he would talk to her and return. He then left the store, but never came back. About the time Jollet was turned over to King defendant Pinkerman came into the store, said to Miss White that he was waiting for his sister and sat down in a chair in front of the showcase containing the rings, close to the end at which the rings had been placed. He gradually moved the chair more to the end of the case, so that, from its final location, it was possible to reach the back of the case. Jollet went out about ten minutes after Pinkerman entered. The latter remained in the store for three-quarters of an hour to an hour after Jollet left, but no one came in to meet him and he departed at about 1:15 p. m. About 2 o'clock King noticed that the sliding door of the case containing the rings had been opened five or six inches at the end where the rings had been, and that the rings were gone.

The last time any of the employees had seen the rings in the showcase was about 11 a. m. None of them took the rings from the case, and no other visitors than Jollet and Pinkerman were in the store from a few minutes after the time Jollet entered until the loss of the rings was discovered. In this respect, the period of an hour before noon is not covered by the evidence. While King was waiting on Jollet he stood at a showcase farther back in the store than that at which Pinkerman was sitting. King faced Pinkerman and could

see him but did not actually observe him all of the time because, as he said, he had to look at the man he was waiting on. Besides, Pinkerman was leaning on the end of the case and this obstructed King's view of the case. Miss White walked around some but mostly sat where she could see Pinkerman's head and shoulders but not his hands. She did not watch him all the time, for she did not see him go out. Another employee, Miss Flynn, came back from lunch before Pinkerman left and saw him, but seems to have paid little attention to him, for she, also, did not notice his departure.

The transaction above stated occurred on July 30, 1942. On August 12, 1942, the two defendants put on a similar act at the jewelry store of Carl E. Schultz on Wilshire Boulevard in Beverly Hills, and this is the subject of counts III and IV which charge grand theft and burglary. Defendant Pinkerman came into the store about 12:50 p. m., said he was waiting for his sister, wandered around the store, looking in the show windows, and then sat down in a chair right in front of the diamond window showcase, in which a diamond ring worth $1,235 had been placed that morning. After he had sat there about 15 minutes, defendant Jollet entered the store, told Schultz he was looking for some watch attachments, and after being shown some, asked for ladies' watch bands. He looked at those, said his wife was shopping near and he would bring her back, left the store and did not return. During the time Jollet was in the store, Schultz was about 20 feet from Pinkerman and could not see what Pinkerman was doing because Jollet kept between Schultz and Pinkerman. The two defendants were in the store altogether about 30 minutes and when Jollet left Pinkerman had already gone but Schultz did not see him leave.

When Schultz prepared to close his store, at 5:30 p. m. that day, he discovered that the ring above mentioned was gone from the window showcase near which Pinkerman had sat. The last time he had seen it there that day was about 11 a. m. This showcase was enclosed on the store side by a partition, of wood at the bottom and of glass at the top, which extended 6 feet above the floor. Above this partition was an open space of 4 feet. There was a hinged door in the partition, but it was kept locked and was not opened this day from the time the case was filled at the opening of the store until Schultz was preparing to close the store. The ring was at the back of the window, near this partition, and to reach it from the store with the door locked a person would have to stand on a

chair and reach down over the partition. No one was seen to do this. While the two defendants were in the store with Schultz no one else was there, but during other parts of the day other persons were in it.

The evidence shows the two transactions above mentioned in much more detail than does the foregoing statement, but we have omitted no detail which seems to us of consequence. The defendants took the stand and denied both transactions, and denied that they had been in the stores at all, or in the Anstead store, hereinafter mentioned. No witness saw any ring removed from the showcase in which it had been placed by the storekeeper, or saw any overt act possibly constituting part of the process of removal, no fingerprints were shown to have been found on any of the showcases, and the articles stolen have never been found, as far as appears. The facts thus far stated, however, will support several inferences which the trial court may have drawn in support of its judgments. First: that defendant Pinkerman had an opportunity to commit each of the thefts charged. The opportunity was such as to require considerable agility, quickness and audacity on his part to take advantage of it, especially in the Schultz case, but yet it was an opportunity. Second: that the presence and activities of Jollet in each store helped to create this opportunity. Third: that neither of the defendants had any legitimate reason for entering either store. The reason assigned by each for entering appears to have been fictitious.

The first of these inferences is insufficient of itself to support the convictions. A showing of mere opportunity for the defendant to commit a crime, unless it excludes all reasonable opportunity for its commission by another is not, standing alone, sufficient to justify a verdict or finding of guilty. (*People* v. *Viets,* (1926) 79 Cal.App. 576, 589 [250 P. 588]; *People* v. *Silva,* (1920) 48 Cal.App. 728, 737 [192 P. 330]; *People* v. *Tarbox,* (1896) 115 Cal. 57, 63 [46 P. 896]; see, also, *People* v. *Wong Ah You,* (1885) 67 Cal. 31 [7 P. 8]; *People* v. *Ong Git,* (1910) 14 Cal.App. 278 [111 P. 630].)

We need not decide whether the second and third inferences above mentioned add sufficient support to the findings to uphold them, for other facts were shown. The defendants admitted as witnesses, and Jollet admitted to the arresting officers also, that they were acquainted with each other. Testimony for the prosecution showed that on August 29, 1942, defendant Pinkerman entered the Anstead jewelry store on Wilshire Boulevard in Beverly Hills, was approached by a

salesman and said he was waiting for his sister, and then went and stood by a showcase containing watches and looked into it. In a few minutes defendant Jollet came into this store and said he was waiting while his wife was telephoning. Pinkerman left while Jollet was there, although no sister had appeared, and Jollet stayed only a few minutes and left. While they were in the store, the owner of the store and four employees were in it. One of these employees, Todd, had talked to the police before this visit. He went out to the street and watched the defendants after they left, and testified that they entered an automobile together, with Jollet at the wheel and a woman in the back seat. This occurrence was the subject of count V on which the defendants were acquitted. The acquittal does not, however, prevent the consideration of the evidence regarding this count in connection with other counts, so far as it is pertinent.

Adding these facts to those previously shown, the trier of facts could reasonably infer that there was a concert of action between the defendants, involving a definite plan or scheme by which they would enter jewelry stores with an excuse for Pinkerman's presence which would in itself avert attention from him, while Jollet averted it further by actively concentrating it on himself, thus enabling Pinkerman to steal any accessible article without detection. In the Anstead case no doubt they saw at once that their plan would not work because the store personnel was too numerous for all to be easily diverted, and so they departed with little delay and contrary at least to Pinkerman's excuse for being there.

■ To the officers who had him in custody Pinkerman made incriminating statements. He stated, in reply to questions which referred to both the Howes and the Schultz cases, that he had given the ring taken from the Schultz store to a man who had taken it to Chicago and that "If I tell you all about these thefts, I haven't got a chance, I am sunk, but if I say nothing, why I have got one chance in one hundred of beating the rap, beating the case." These statements of Pinkerman were admitted against him only; so they cannot be considered against Jollet. Jollet, at the time of his arrest, which was ten days after that of Pinkerman, refused to say what he had been doing or where he had been living, and tacitly admitted that he had moved in a hurry the night Pinkerman was arrested, leaving some things behind.

■ We think the evidence, taking it as a whole and accepting all the reasonable inferences from it most favorable

to the findings of guilt, is sufficient to uphold them as to both defendants and on both counts. It is true, there is no such implied admission of guilt by Jollet as that made by Pinkerman in saying that if he told all about these thefts he was "sunk"; but Jollet was present with Pinkerman at all of the places where theft was committed. He denied such presence, as a witness, thus failing to give any explanation for it, and he gave the storekeepers explanations which were false. He moved in great haste after Pinkerman's arrest and refused to give any account of his movements or doings thereafter. He and Pinkerman were, as already stated, cooperating in a plan for obtaining jewelry from these stores.

As a branch of their argument on insufficiency of the evidence defendants argue that there is no showing of their intent to commit theft when they entered the respective stores—an intent which must be shown to prove the burglaries charged. To our minds, such intent stands out so plainly from the evidence, accepting that which the trial court believed, that no further discussion of it appears necessary.

The judgments and orders appealed from are affirmed.

Desmond, P. J., and Shinn, J., concurred.

Appellant Jollet's petition for a hearing by the Supreme Court was denied September 15, 1943. Traynor, J., voted for a hearing.