[Crim. No. 2282. First Dist., Div. Two. Jan. 3, 1944.]

THE PEOPLE, Respondent, v. ANTHONY VITOS, Appellant.

Walter H. Duane for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

STURTEVANT, J.—The defendant was convicted on a charge of burglary. From the judgment he has appealed. He claims that the evidence was insufficient. A determination of the merits of that claim requires a statement of the evidence.

On the trial the prosecution called two witnesses, Bert Keane, a saleman, and Charles A. Gallivan. The former was at the time of the offense a salesman in the clothing department of the White House, a prominent department store in San Francisco. Mr. Gallivan was at said time an inspector of the San Francisco Police Department assigned to the shopping detail. The prosecution called no other witness. The defendant did not take the stand as a witness in his own behalf, nor did he call any witness in his defense.

An inspection of the evidence discloses that on the 8th day of January, 1943, at about four o'clock in the afternoon, Mr. Keane was near the clothing department standing on a balcony overlooking that department. He saw the defendant enter the store and walk in the direction of the shoe department. How-

ever, as the defendant passed a table in the clothing department he paused and commenced to examine an overcoat that was lying on the table. He picked up the garment and dropped it. He repeated those movements two or three times and then unbottoned his own overcoat, pulled the coat from the table, stuffed it inside of his trousers, buttoned up his overcoat and went directly out of the store. From the time he entered until he left he did not transact any business with any of the attachés of the store. From the time he entered until he left he was in the store approximately ten minutes. As the defendant went out onto the street Mr. Keane followed him and overtook him on the sidewalk. There he took hold of the defendant and stated to him that he had taken a coat. The defendant attempted to free himself from Mr. Keane's grasp but about that time some of the older attachés of the store came to his assistance and the defendant was taken inside the store and held there until a police officer could be summoned.

The overcoat which the defendant took from the table in the White House was produced by the prosecution and introduced in evidence without objection. The overcoat which the defendant was wearing was also produced by the prosecution and was also introduced in evidence without objection. The record discloses that the latter garment had a pocket about twelve inches wide and twelve inches deep. The exhibits have been brought up and are before us. When Mr. Gallivan appeared at the White House the defendant had been taken into custody by Mr. Keane and his associates. He talked to the defendant and the latter freely admitted taking the coat from the table in the White House and wanted to compensate the White House therefor. Mr. Gallivan searched the defendant for weapons. In doing so he noticed the twelve-inch pocket in the overcoat which the defendant was wearing, but he found nothing contained in that pocket.

▆ After quoting from the record the defendant contends there was no evidence that he entered the White House with intent to commit grand or petit larceny after he had made the entrance. Continuing, the defendant asserts that such proof was essential to support the judgment. (Pen. Code, sec. 459; *People* v. *Barry,* 94 Cal. 481 [29 P. 1026].) The respondent does not question either authority. On the other hand it contends that the prosecution was entitled to prove,

and did prove a burglarious intent by the circumstances hereinabove noted. (*People* v. *Westwood*, 88 Cal.App. 505 [263 P. 856]; *People* v. *Blair*, 122 Cal.App. 455 [10 P.2d 196].) That claim we think is clearly sustained. There is not a particle of evidence that the defendant entered the White House on the said 8th day of January, 1943 for any other purpose than to commit, and that he did commit a burglary. That his intention on entering was burglarious was shown by the circumstances that he did in fact then and there commit a theft; that he did not attempt to transact any legitimate business; that he was in said store only about ten minutes; that he freely admitted taking the overcoat and attempted to pay therefor; and that on the trial he did not attempt to explain any of said acts. Moreover the coat which the defendant was wearing would tend to indicate that he was a professional shoplifter. (*Commonwealth of Massachusetts* v. *Coyne,* 228 Mass. 269 [117 N.E. 337; 3 A.L.R. 1209], and cases there cited, p. 1220 [3 A.L.R.] et seq.)

The defendant asserts, however, that there was no evidence the stolen overcoat was put in the pocket of the overcoat he was wearing and therefore that the circumstance existed that the latter coat had an extra large pocket was immaterial. With that assertion we do not agree. The piece of evidence we are now considering might be colorless if it stood alone, however when it is considered together with the other facts which we have enumerated it has a very different meaning. (*Commonwealth* v. *Mulrey,* 170 Mass. 103 [49 N.E. 91].) In that case Mr. Justice Holmes said: "It is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which may be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other facts." Again the defendant asserts there was no evidence that the pocket in said overcoat had been enlarged or that it was not as made by the manufacturer. The record does not support that contention. The overcoat was introduced in evidence. We have examined it. It may be that the jury reached the conclusion that said pocket had been improvised by the defendant or on his order.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.