[Crim. No. 6100.   Second Dist., Div. One.   Feb. 24, 1959.]

THE PEOPLE, Respondent, v. MELVIN JOSEPH CONERLY et al., Defendants; GEORGE HENRY HILTON, JR., Appellant.

Rufus W. Johnson for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an amended information filed by the district attorney of Los Angeles County, defendants were jointly charged in Count I with the crime of burglary (Pen. Code, § 459) in that on or about May 2, 1957, in Los Angeles County, they entered the clothing store of Hubert Ewart and Robert Ewart with intent to commit theft. Count II charged the crime of grand theft (Pen. Code, § 487, subd. 1) in that on or about May 2, 1957, in the County of Los Angeles, they feloniously took certain men's suits of the value of $15,000, belonging to Hubert Ewart and Robert Ewart.

As to defendant Hilton it was also charged that he had previously been convicted of three felonies in the courts of this state, viz., manslaughter, violation of Vehicle Code, section 503, and receiving stolen property. These prior convictions were admitted. Defendants pleaded not guilty. Tried by a jury, they were convicted of burglary as charged in Count I, which the jury found to be burglary of the first degree. They were acquitted of the offense of grand theft as charged in Count II. Their motion for a new trial was denied, but the court reduced the degree of the burglary from first to second degree. Defendants were sentenced to state prison. From the judgment of conviction and the order denying his motion for a new trial, defendant Hilton prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reflects that on May 1, 1957, an employee of the Ewart Clothing Store in Pomona, Los Angeles County, was the last person to leave there. Before departing he saw that the upstairs was securely locked and that the front and rear doors downstairs were also locked. He departed through the front door on Second Street and was the last person out of the store.

At approximately 3 o'clock on the morning of May 2, 1957, Officers William C. Julian and Donald P. Burke of the Pomona City Police Department were on routine patrol in a police car. While eastbound through the alley south of Second Street going towards the block in which Ewart's Clothing Store is located, Officer Julian observed an automobile turn into the alley from Main Street. This automobile was headed

west. The automobile did not stop in the alley behind Ewart's but proceeded past there, came out of the alley and turned north. The officers stopped the automobile, a 1947 Chevrolet two-door sedan, and discovered defendants Conerly and Hilton therein with Conerly driving.

Conerly was wearing a light brown checked sport jacket, similar to People's Exhibit Number 11, and sport trousers. Officer Julian asked Conerly for his operator's license, and, after he produced that, asked him why was he in the alley. Conerly stated that he and Hilton were looking for the address of a friend, but apparently had gotten lost. Conerly was given a citation for carrying an improper driver's license. Officer Julian noticed that the rear seat was out of the car and asked Conerly if he would open the trunk so they could see inside. The officer noticed that the trunk of the car was quite clean.

Officer Burke asked Hilton where they (Conerly and Hilton) were going, and was informed they were looking for a place called ''Cookie's.'' The officers knew where Cookie's was and furnished defendants Conerly and Hilton with directions as to how to reach there. The officers followed Conerly and Hilton to Cookie's, waited around a little bit, and a few minutes later followed them until they left town.

Mr. Hubert Ewart was a coowner of Ewart's Clothing Store. On the morning of May 2 he arrived at the store about 8 o'clock. The back door of the store was unfastened. The bar of the lock had been chipped in two. There were about 400 suits missing from the clothing racks that morning and two different stacks of suits had been placed near the back door. A hole had been chopped in the roof of the building, making an opening from the roof down into a storage room on the second floor. This hole had at one time been an opening which people used to go in and out of but it had been boarded up for at least two years. The ceiling side of this opening from the roof into the storage room had been sealed with building paper prior to May 1, but on the morning of May 2, there was a hole in this ceiling.

Harvey Densel King was a dry cleaner, operating a place of business at 4455 Avalon Boulevard, Los Angeles. About 2 p. m. on May 3, 1957, King had a conversation with defendant Hilton at King's shop regarding the purchase of suits. Hilton stated he had ''a bunch'' of suits and King stated he would look at them that night. That night between 10 p. m. and 11 p. m. Hilton and Conerly brought the suits in a pick-up truck.

There was a woman in the truck, but King never did see who this woman was. King was alone in the shop and Conerly and Hilton brought in the suits an armload at a time. King checked the suits and observed that "they had Ewart's label, Ewart's, Pomona." The next morning defendants Conerly and Hilton came to the shop and King "paid them $2500 and $50 in hundred dollar bills, $50 bills, and $20 bills." They both took the money and counted it out together.

Donald M. Whitehead was a police officer of the City of Pomona and one of the investigating officers in the case. On the morning of May 2, Officer Whitehead found certain clothing fibers (People's Exhibit No. 13) clinging to portions of the wood at the point of entry into Ewart's Clothing Store. On May 6, 1957, Officer Whitehead called at defendant Conerly's home in San Bernardino. There he discovered a jacket hanging in a clothes closet. From this jacket he took certain fibers (People's Exhibit No. 12) and transported them to the Sheriff's crime laboratory. Officer Whitehead received a report that the fibers found adhering to the point of entry were quite similar in color and characteristics to the fibers in a coat which the report spoke of as coat X-1. Coat X-1 was the coat removed from the home of defendant Conerly.

On May 7, 1957, Officer Whitehead called at King's place of business. At King's establishment and at two other places to which the officer was directed by King the officer recovered 158 or 159 suits. Mr. Ewart was called to come in and pick up the suits. He proceeded in the company of an officer to the 4400 block on Avalon in Los Angeles (King's establishment) and there met with Officer Whitehead and other officers. He saw a number of suits that he recognized. The 158 or 159 suits were returned to Ewart's in Pomona. The wholesale value of the suits found missing from the store was $10,572.43.

Sworn as witnesses in their own behalf, both defendants denied any knowledge of the burglary here in question, and denied selling any suits of clothing to Harvey D. King. They admitted their presence in Pomona as testified to by the police officers, but declared they were there ". . . looking for a little gambling" at Cookie's place. Defendant Hilton testified that the rear seat was removed from the automobile because it was used as a work car.

Defendant Hilton further testified that about 8 p. m. on Friday, May 3, 1957, he, defendant Conerly, Mattie Bruce, and one Ira E. Bluford had been at a store in Colton, California. That they went from Colton to Riverside, arriving

about 9 p. m., and from Riverside to San Bernardino. He testified that he, Mattie Bruce, Laura Roberson, and J. C. Roberson, her husband, then had gone from San Bernardino to visit one Sally Dickson at Pear Blossom, arriving about 12 midnight. Pear Blossom is about 50 miles from San Bernardino. Defendant Conerly testified that he had been with Hilton at the store in Colton around 8 p. m., that he had parted with Hilton in San Bernardino, about 9:30 p. m., and that he had gone to his house and stayed home the rest of the night. Defendant Conerly further testified that from 8 a. m. until 11 a. m. the next day he had been with his mother downtown in San Bernardino.

Laura Roberson testified that Hilton and Mattie Bruce had come to her house in San Bernardino about 10 p. m., May 3, that she, her husband, defendant Hilton, and Mattie Bruce had gone to Pear Blossom, arriving between 11:30 p. m. and 12 midnight, that they left Pear Blossom about 2 a. m., returning to her home in San Bernardino, that she and Mattie Bruce had left her husband and defendant Hilton asleep in the car at her home, and that Hilton and Mattie Bruce had left her home about 8:30 a. m. The testimony of Mrs. Roberson was corroborated by her husband.

Sally Dickson testified that defendant Hilton, Mattie Bruce and Mr. and Mrs. Roberson had arrived at her place at Pear Blossom between 11 p. m. and 12 midnight May 3, 1957, and had left about 2 a. m. Beryl Guthridge testified that he was a shoe salesman at Willet's Department Store in Colton and had sold defendant Conerly shoes about 8 p. m., on May 3. Mary S. White testified that she was the mother of defendant Conerly, that on May 3, 1957, he had come home about 10 p. m., that he had stayed home the rest of that night, and that he had been downtown in San Bernardino with her the next morning. Ira Bluford testified that from about 6 p. m. until about 9:30 p. m., May 3, 1957, he was with defendants Conerly and Hilton in San Bernardino, in Colton, and in Riverside.

On cross-examination it was brought out that defendant Conerly was the son-in-law of the witness, J. C. Roberson. It was also revealed that defendant Hilton owned a 1950 Chevrolet convertible coupé and that he had not loaned this vehicle to anyone on May 2, 3, 4, 5, 1957. Also, that the automobile was green with a black top.

On rebuttal, Mary King testified that she was the wife of Harvey D. King and conducted a cleaning business under the name of Kay Dry Cleaners. She testified that on May 3,

around noon, defendant Hilton came to the shop, asked for her husband, and then went to the back of the shop where her husband was. She further testified that she observed the car that defendant Hilton got out of, noticed that it was a beige or yellow convertible with no top, and wrote down the license number, HPA-263. She stated there was another man in the car. She did not notice the make of the automobile. Mr. James Beard testified that he was an automobile salesman and that in March of 1957 he had sold to defendant Hilton a green 1950 Chevrolet convertible, license Number HPA-263.

On surrebuttal, defendant Hilton testified that the 1950 Chevrolet automobile was green in color, that he had not been at the Kay Cleaners on the morning of May 3, and that he had never seen Mrs. King before the day of the trial.

■ As his first ground for reversal of the judgment and order, appellant Hilton contends that the evidence was insufficient to sustain the guilty verdict. In support of this claim he argues that the exact time the burglary was committed is not shown by the evidence. From which, he urges, there is no evidence to establish as a fact whether or not the burglary had or had not been committed at the time the Pomona police officers encountered appellant Hilton and his codefendant on the early morning of May 2, 1957. That the mere presence alone in the vicinity where a burglary was committed on the date of its commission is insufficient to establish guilt of such burglary. However, appellant overlooks other direct and circumstantial evidence in the record of an incriminatory character. We deem it unnecessary to here repeat the evidence which we have narrated herein. Suffice it to say that on the very next day following the burglary, appellant and his codefendant were in possession of the stolen goods which they sold to a dry cleaner for $2,550 when the established wholesale value of such goods was $10,572.43. (*People* v. *Buratti,* 96 Cal. App.2d 417, 419 [215 P.2d 500] ; *People* v. *Conrad,* 125 Cal. App.2d 184, 186 [270 P.2d 31].) ■ While it is true, as urged by appellant, that mere possession of property recently stolen is not, standing by itself, sufficient to support a conviction, nevertheless, it is a circumstance which, unexplained, is a circumstance strongly indicating guilt (*People* v. *Jackson,* 146 Cal.App.2d 553, 555, 556 [303 P.2d 767]). And, where this circumstance is established, only slight other evidence is required to sustain a judgment of conviction (*People* v. *Wiley,* 8 Cal.App.2d 135, 136 [46 P.2d 817]). ■ The jury was also authorized to conclude that when considered in the light

of other proven facts and circumstances, it was more than a mere coincidence that appellant and his codefendant were discovered by the police in the alley behind the burglarized premises on the night of the crime and that fibers adhering to the wood at the point of entry into the building were disclosed by laboratory tests as "quite similar in color and characteristics to the fibers in a coat belonging to defendant Conerly."

■ Appellant complains that, "The testimony of witnesses for the defendants was completely disregarded. Their testimonies, exclusive of the defendants themselves, proved conclusively that the testimony of Harvey Densel King was false." That the testimony of witnesses for the defense was not accepted by the jury is of course manifest, but as conceded by appellant in his brief, "However, we are aware of the fact that the question of the credibility of witnesses is for the court below and not for the Appellate Court to determine." It is axiomatic that unless the testimony found to be true by the duly constituted arbiters of the facts is inherently improbable, an appellate tribunal is not authorized to substitute its judgment for that of the triers of fact. No such claim of inherent improbability is urged in the case at bar.

■ Finally, appellant contends that the witness, Harvey D. King, was an accomplice, and that "the trial court erred in failing to instruct the jury on the law governing testimony of accomplices." Although the instructions requested, given and refused have not been brought here on this appeal in compliance with rule 33(b)(1)(b) of the Rules on Appeal, even though we assume that the jury was not instructed that the testimony of an accomplice must be corroborated (Pen. Code, § 1111), the failure to give such an instruction was proper. Appellant's contention to the contrary is answered by the language of our Supreme Court in *People* v. *Raven,* 44 Cal.2d 523, wherein it is said, at pages 526, 527 [282 P.2d 866] :

"The next question is whether the court erred in refusing to instruct the jury that defendant could not be convicted on the uncorroborated testimony of Diggs. Section 1111 of the Penal Code provides that a 'conviction cannot be had upon the testimony of an accomplice unless it be corroborated' and defines an accomplice as 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' It is settled that the thief and the one knowingly receiving stolen property from him are guilty of distinct and separate substantive offenses and are not accomplices of each other.

158

(Citing cases.) An exception to the rule is recognized when the thief and the receiver conspire together in a prearranged plan whereby one is to steal and the other is to buy. (Citing cases.) The evidence here, however, does not warrant a conclusion that defendant and Diggs entered into such a conspiracy, and, accordingly, no corroboration of the testimony of Diggs was required.'' (See also *People* v. *Hamilton*, 143 Cal.App.2d 305, 309, 310 [299 P.2d 716], and *People* v. *Conrad*, 125 Cal.App.2d 184, 185, 186 [270 P.2d 31].)

In the instant case, the record clearly reveals that the witness Harvey D. King was not the accomplice of appellant and the latter's codefendant in the crime of burglary.

For the foregoing reasons, the judgment and the order denying appellant Hilton's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.