[Crim. No. 3579.   First Dist., Div. One.   July 2, 1959.]

THE PEOPLE, Respondent, v. EDDIE TIMS, Appellant.

William B. Emmal, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Edward P. O'Brien and John S. McInerny, Deputy Attorneys General, for Respondent.

WAGLER, J. pro tem.*—Defendant was convicted by a jury of a violation of Penal Code, section 464—burglary with explosives. This section so far as pertinent provides that "Any person who, with intent to commit crime, enters . . . any building . . . and opens or attempts to open any . . . safe . . . by use of acetylene torch . . . is guilty of burglary with explosives."

Defendant contends: (1) that the trial court erred in the admission in evidence of certain extrajudicial statements made by him at the time of and subsequent to his arrest; (2)

---

*Assigned by Chairman of Judicial Council.

that the evidence was insufficient to sustain his conviction; and (3) that the trial court committed reversible error in instructing the jury.

The first witness for the People was one Harold R. Jarvis, president of Transportation Guarantee Company, which operates a truck repair business at 1835 Folsom Street, San Francisco. He testified that on Saturday, March 29, 1958, he left his place of business about 2 p.m.; that at that time the offices which were on the mezzanine floor were in proper order; that when he returned the following Monday morning the bookkeeper's office was "turned around, desks were moved, and the safe was missing." Also missing was a "Kodascope 1620" motion picture projector and numerous other items of personal property.

The safe which weighed between four and six hundred pounds was later found on the ground floor, inside a newly painted furniture trailer. Near the safe were two complete acetylene torch units. Mr. Jarvis described the condition of the safe as follows: "The hinges and the door were burned off, and all the records inside were partially burned and charred. The cash drawer [containing about $230] had disappeared altogether." Photographs of the safe were introduced in evidence and certain discolored areas shown were described by the witness as acetylene burns.

The foregoing is all of the evidence offered to establish the corpus delicti and defendant contends that on this state of the record it was error to receive evidence of his later possession of a portion of the missing property and of his conflicting statements made in relation thereto.

Proof of the corpus delicti was of course prerequisite to the admission of the evidence in question. Defendant concedes that all of the elements of the offense charged were adequately established except the element of entry. His argument on this point, however, appears to be based entirely upon the erroneous assumption that to establish an entry one must also prove a "breaking." Defendant cites many cases which factually describe an actual breaking. In each case, however, the "breaking" was only incidental to the entry.

At common law and in some jurisdictions a breaking is still one of the essential ingredients of the crime of burglary, but this rule does not prevail in California. In this state entry with the requisite intent is sufficient. (*People* v. *Barry*, 94 Cal. 481 [29 P. 1026]; *People* v. *Brittain*, 142 Cal. 8 [75 P.

314, 100 Am.St.Rep. 95]; *People* v. *Ferns*, 27 Cal.App. 285 [149 P. 802]; *People* v. *Descheneau*, 51 Cal.App. 437 [197 P. 126]; *People* v. *Sparks*, 44 Cal.App.2d 748 [112 P.2d 974]; *People* v. *Corral*, 60 Cal.App.2d 66 [140 P.2d 172]; *People* v. *Jollet*, 60 Cal.App.2d 245 [140 P.2d 479]; *People* v. *Vitos*, 62 Cal.App.2d 157 [144 P.2d 393]; *People* v. *Garrow*, 130 Cal. App.2d 75 [278 P.2d 475].)

▇ The element of entry, like any other element of the corpus delicti, need not be proved by direct, positive evidence, but may be proved by circumstantial evidence and reasonable inferences to be drawn therefrom. (*People* v. *Sparks*, 82 Cal. App.2d 145 [185 P.2d 652].) ▇ The circumstantial evidence here consisted in the disarray of the office and the disappearance of various articles therefrom, together with the removal of the safe to the ground floor; the damage inflicted thereon and the disappearance of the cash drawer and its contents.

The case of *People* v. *Smith*, 145 Cal.App.2d 149 [302 P.2d 63], relied upon by defendant does not support his contention. The circumstantial evidence in the Smith case was much weaker than in the instant case. In Smith, the record showed that Smith was arrested with certain articles of property of one McCurdy in his possession. McCurdy testified that the articles were in his wallet which was in his trousers which he placed on a night stand in his room when he retired; upon arising the next morning he found his trousers outside the house; the wallet and the contents were missing. Smith was shown to have made conflicting claims as to how he came into possession of the articles in question. He contended on appeal, as does the appellant herein, that the missing articles could have been removed by someone who made a lawful rather than an unlawful entry. It was held, however, that ''. . . it was for the jury to determine the nature of the entry made when the articles were taken and the intent with which it was made.'' The same holds true here.

Since the identity of the perpetrator of the crime charged is not a part of the corpus delicti (*People* v. *Tarbox*, 115 Cal. 57 [46 P. 896]; *People* v. *Day*, 71 Cal.App.2d 1 [161 P.2d 803]), we must conclude that the foundation for the admission of the evidence in question was adequate. (See *People* v. *Selby*, 198 Cal. 426 [245 P. 426]; *People* v. *Mason*, 37 Cal.App. 2d 407 [99 P.2d 567].)

The record shows that all of the usual and necessary cautionary instructions on circumstantial evidence were given;

the implied finding of the jury that the corpus delicti was sufficiently proved must therefore be accepted. (*People* v. *Smith,* 145 Cal.App.2d 149, *supra*; *People* v. *Dodson,* 77 Cal. App.2d 389 [175 P.2d 59].)

The evidence relied upon to connect the defendant with the offense in question was substantially as follows: On April 4, Inspector Merrill of the Pawn Shop Detail of the San Francisco Police Department saw the defendant carry the projector described in the previous testimony from an automobile into a pawn shop on Market Street. The inspector entered a few minutes later and asked the defendant to produce identification. Defendant thereupon presented a bank book, a social security card and a union ticket, each bearing the name of one Rudolph Berry of Martinez, California. When asked about the projector, defendant first denied having any knowledge concerning it. Later he stated that as he was passing the pawn shop on foot the proprietor thereof asked him to carry it in from the latter's car which was parked at the curb. When questioned further he stated that he had borrowed the projector at an unidentified place from a person whom he refused to name.

On April 7, defendant was interviewed in the city prison by Inspector Keyworth. He at that time repeated substantially the same account of his contact with the projector as first given on April 4.

On April 15, defendant was again interviewed by Inspector Keyworth at which time he gave still another version, to wit: that at the request of the pawnbroker he had accompanied the latter to an address on 14th Street; that he was there given the projector and had just been driven back to the shop when he was arrested. (This version was repeated by the defendant at the trial.)

The pawnbroker testified that prior to April 4, defendant had on pledge in his shop a tape recorder; that on the date in question defendant had asked permission to substitute in its place a movie projector because the recorder was not paid for and had to be returned. The pawnbroker agreed to the exchange and because defendant had no means of getting the projector he had driven defendant to an address designated by defendant in the 900 block on Hayes Street to pick it up. (When sworn as a witness at the trial defendant gave his address as 980 Hayes Street.)

In view of the inconsistent and contradictory statements

made by defendant prior to the trial it is not surprising that the jury chose to believe the testimony of the pawnbroker.

While possession of stolen property, considered alone, is not sufficient to justify a conviction, it is a circumstance to be considered in connection with all other evidence in determining the question of guilt or innocence.     While in addition to proof of such possession, corroborating circumstances tending of themselves to establish guilt must be proven, it has consistently been held that such corroborating circumstances may consist of conduct and false and conflicting statements of the type disclosed by the record in this case. (*People* v. *Buratti*, 96 Cal.App.2d 417 [215 P.2d 500]; *People* v. *Conrad*, 125 Cal.App.2d 184 [270 P.2d 31]; *People* v. *Gregor*, 141 Cal.App. 2d 711 [297 P.2d 734]; *People* v. *Jackson*, 146 Cal.App.2d 553 [303 P.2d 767]; *People* v. *Conerly*, 168 Cal.App.2d 151 [335 P.2d 518].)

We conclude that defendant's conviction is supported by ample evidence, properly admitted.

Defendant's contention that the trial court erred in instructing the jury is also without merit. His first attack on the instructions is addressed to the fact that the only instruction defining the crime with which he was charged consisted in a reading of the statute in question. This court has repeatedly held this to be sufficient. (See *People* v. *Martin*, 44 Cal.App. 45 [185 P. 1003]; *People* v. *Bratton*, 125 Cal.App. 337 [14 P.2d 125]; *People* v. *Hedspeth*, 39 Cal.App.2d 300 [102 P.2d 1088].)

The trial court gave the customary instructions dealing with the impeachment and credibility of witnesses based upon Code of Civil Procedure, sections 2051 and 2052. These were followed by CALJIC 54A which explains the limited purpose for which extrajudicial statements may be considered. Defendant complains that the effect of these instructions was to unduly stress the fact of his prior felony conviction and alleged contradictory statements. This complaint is entirely unwarranted. The only reference to a felony conviction was in the language of the code section and instruction 54A was favorable to the defendant. To refuse it when requested by a defendant is reversible error. (See *People* v. *Orcalles*, 32 Cal. 2d 562 [197 P.2d 26].)

Finally, defendant argues that because the instructions repeated the term "guilty" 28 times and mentioned the word "innocence" but six times that such "slanted" instructions adversely affected his right to a fair trial. The argument is

specious. It is most deceptive since it quotes the term "guilty" out of context without attempting to state the manner in which it was used. In many instances the court utilized the term in cautionary instructions for safeguarding the defendant's rights. Considered as a whole we find the instructions to have been eminently fair.

Judgment affirmed.

Bray, P. J., and Tobriner, J., concurred.