[Crim. No. 1576. Fourth Dist. Mar. 8, 1961.]

THE PEOPLE, Respondent, v. JAMES DUDLEY
CHAMBERS, Appellant.

Chandler & Armstrong and Joseph A. Armstrong for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

SHEPARD, J.—This is an appeal from a judgment of conviction of burglary, second degree, and petty theft.

In general substance, the record before us reveals the following facts: Defendant was employed as a test driver by a corporation researching smog control. Its place of business is in the southerly part of Los Angeles. On July 6, 1960, he was driving a green and cream-colored 1955 Chevrolet station wagon, California State license number MTR 842. At about 7:30 a. m. the same day, Hueston Harper, a school teacher, and his son left their home in Costa Mesa. The doors of his garage were left closed. His power lawn mower and power edger were inside the garage. Mrs. Harper remained at home. The garage is in front of the house so that she could not see its front. She was in and out of the garage several times during the morning, and saw the mower and edger therein, the last time at about 11:30 a. m. The Harpers gave no one permission to take the mower and edger, nor to enter the garage. Defendant does not claim such permission.

During the noon hour, at about 12:30 p. m., Oedus Bankston, also a school teacher, who lived directly across the street from the Harper home, saw three men, including defendant, standing in front of the driveway to the garage, with a parked green and cream-colored 1955 Chevrolet station wagon. Bankston entered his home and came out again almost immediately. He then saw these three men hurriedly carrying a power mower and edger down the driveway from the garage to the station wagon, and saw them throw these articles into the open rear of the station wagon. The grass catcher from the mower was later found lying in the center of the garage. They left in such a hurry that they did not close the tailgate, and started so fast that the stolen articles almost skidded out the back. Bankston was suspicious, and ran into the street attempting to write down the license number. He caught the number to the extent of "MTR-2."

Just after defendant's car disappeared around the corner, Harper drove up. Bankston quickly acquainted him with the

circumstances, and Bankston and Harper pursued the station wagon in Harper's car. Within a short distance and time, they overtook a green and cream-colored 1955 Chevrolet station wagon with the three men in the front seat and the handles of the mower and edger showing. They attempted to stop it, recorded the full license number, MTR 842, and at one time were within 3 feet alongside of it, where Bankston identified the driver as one of those who had taken the mower and edger. When Harper honked his horn and motioned with his hand for them to stop, the occupants reached back and rolled up all windows and locked the doors, and shortly the station wagon turned abruptly into an alley and sped away. Harper overshot the alley, and by the time he had stopped, backed and turned into the alley, the station wagon was proceeding at such high speed Harper gave up the chase as too dangerous. After defendant's arrest some days later, Bankston identified defendant in a line-up at the police station.

On the day following the theft, defendant drove this station wagon into his place of employment and a fellow employee noticed and called the attention of defendant to the fact that both license places were missing from the car. Defendant then claimed the plates had been lost. Defendant's employer was skeptical of both plates being lost at once, so they were reported as stolen. At no time and to no one did defendant state that he had loaned the car to anyone else, or that it had been out of his possession at any time during July 6, the day of the theft. Bankston and Harper later went to defendant's place of employment, and there identified the station wagon driven by defendant as the one they had pursued in Costa Mesa, as above described.

After defendant was arrested, he told the officers, first, that he did not know where Costa Mesa was. Next, he said he had never been in Costa Mesa, was very vague as to his whereabouts on the day in question, and indicated he might have been driving in the Hollywood area of Los Angeles. Later he said he might sometime have been in Costa Mesa but if so, it was many years previous. He testified at the trial that on the day in question he had lunch at Long Beach. In his discussions with the officers, he could name no one who could verify any of his activities on the day in question. His car mileage record on the day of the burglary showed 165 miles of travel. In his testimony, he admitted two prior, separately-tried felony convictions, one for a narcotics violation and one for forgery.

### MOTION TO DISMISS INFORMATION PURSUANT TO PENAL CODE, SECTION 995

 Defendant moved, prior to trial, to dismiss the information on the ground that the testimony given in the preliminary examination was insufficient to support the order of the committing magistrate holding defendant to answer to the superior court. The motion was denied. No direct appeal is provided from such an order, but it may be reviewed on appeal from final judgment. (*People* v. *Costa,* 141 Cal.App. 2d 795, 798 [2] [297 P.2d 667].)

The testimony at the preliminary examination is that of Bankston and Harper. It was, in general substance, the same as that given at the trial, as above outlined. Penal Code, section 872, provides, in substance, that if the testimony shows the commission of a public offense and that there is sufficient cause to believe defendant guilty thereof, defendant shall be held to answer. Under Penal Code, section 995, the information may be set aside if the defendant was "committed without reasonable or probable cause." That circumstantial evidence may be used to prove a crime and the connection of the defendant therewith has been so well established as to require no extended citations. (*People* v. *Tims,* 171 Cal.App.2d 671, 674 [3] [341 P.2d 56] and cases there cited. As was said in *People* v. *Davis,* 175 Cal.App.2d 365, 367 [3] [346 P.2d 248] :

" 'On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. . . .' "

 We are satisfied that the evidence was sufficient to show that the crimes of burglary and theft had been committed, and that there was reasonable and probable cause to believe that such crimes were participated in by defendant. There is no merit in the contention of defendant.

### SUFFICIENCY OF EVIDENCE

 Defendant also contends that there was insufficient evidence to support the verdict and judgment. The testimony of Harper that no one had permission to enter the garage or take the mower and edger; that the stolen articles were seen

in the garage as late as one hour before defendant was identified assisting in taking them down the front driveway a few feet from the garage; the identification of the station wagon used by the perpetrators of the burglary; the clear implications of the evidence that defendant was at all times in possession of the car, his positive identification a few minutes later as the driver of the station wagon in Costa Mesa with the mower and edger handles showing; his refusal to stop; his turning abruptly down an alley and evading immediate arrest in a burst of high speed; the peculiar disappearance of the license plates; his vague and contradictory answers to the officers when finally arrested; and the other minor details of his actions and identification, were ample evidence of the commission of the crime and of his participation therein.

█ No breaking in or forcible entry is required in proof of the commission of a burglary. (*People* v. *Tims, supra,* 673 [2].) █ As was said in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]:

" 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' █ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." See also *People* v. *Merkouris,* 52 Cal.2d 672, 678 [1] [344 P.2d 1].

### Instruction on Conflicting Statements

█ Defendant next protests that the instruction given by the court regarding false or misleading statements was prejudicially erroneous in that it assumed that defendant had made false or misleading statements. An examination of the first three words of the instruction make clear that the court left to the jury the question of whether or not there was any such evidence. The instruction given is as follows:

"Evidence, if any, that the defendant, on one or more occasions other than from the witness stand, made false, contradictory or misleading statements concerning the charge against him which now is being tried may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance, and the significance, if any, to be attached to it, are matters for the jury to determine."

To point out only one statement which the jury might have considered false or misleading, defendant told the officers, after he was arrested, that he had not been in Costa Mesa on the day in question. Both he and the station wagon were identified by the prosecution testimony as having been seen in Costa Mesa that day. This certainly was a statement "concerning the charge against him." The jury was the trier of fact. It was properly instructed that its province was to determine the truth of the evidence before it. The record does not support defendant's contention.

█ █ False statements concerning the material circumstances relevant to the crime charged may be received to show consciousness of guilt, and the instruction went no farther than that. (*People* v. *Amaya,* 44 Cal.App.2d 656, 659 [4] [112 P.2d 942]; *People* v. *Gibson,* 64 Cal.App.2d 537, 539 [2] [149 P.2d 25]; *People* v. *Martin,* 16 Cal.App.2d 515, 517 [2] [60 P.2d 1014]; *People* v. *Miller,* 19 Cal.App.2d 708, 709 [1] [66 P.2d 448].)

### IDENTIFICATION

█ Defendant indicates that the evidence on identification was too weak to support the verdict. This requires little comment. A review of the evidence above outlined clearly shows its legal sufficiency. The weighing of such evidence was for the jury. (*People* v. *Millen,* 147 Cal.App.2d 570, 572 [1] [305 P.2d 661]; *People* v. *Primo,* 121 Cal.App.2d 466, 468 [2] [263 P.2d 443]; *People* v. *Miller,* 182 Cal.App.2d 782, 785 [3] [6 Cal.Rptr. 569]; *People* v. *Gardner,* 147 Cal.App.2d 530, 536 [1] [305 P.2d 614].)

A review of the entire transcript convinces this court that the case was fairly tried and that no prejudicial error was committed.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 30, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 3, 1961.