[Crim. No. 7921.   Second Dist., Div. One.   Apr. 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. REX TRACY HILDRETH, Defendant and Appellant.

Rex Tracy Hildreth, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary in the second degree and from an order denying a motion for a new trial.

In an information filed in Los Angeles County the defendant was charged with burglary (violation of Pen. Code, § 459) in that he did on February 3, 1961, enter a laundromat called Brown's Coin-O-Matic, located in the 8900 block on Reseda Boulevard, with intent to commit a theft. The defendant pleaded not guilty. The case was tried before a jury which found the defendant guilty of burglary in the second degree. A motion for a new trial was denied. Plaintiff was committed to the California Youth Authority. The appeal is from the verdict, judgment and order. The verdict is nonappealable. (*People* v. *Vetri,* 178 Cal.App.2d 385, 387 [2 Cal.Rptr. 795].)

A résumé of some of the facts most favorable to the prosecution is as follows: on February 2, 1961, Bertha Scott was in a laundromat located in the Van Nuys area at approximately 9 p. m. Her purse was upon a chair close by. While she was engaged in handling certain clothing, two boys (one of whom was appellant) came into the laundromat. She had her attention called to her purse and upon looking for the purse it was gone. Her wallet within the purse contained a notebook, two folders of keys, a lipstick, a compact and cigarettes. There was also money in the amount of five or six dollars in the handbag. She recovered her wallet from a Mrs. Reeves, who was located at 14116 Erwin Street, and her purse from the police department.

On February 3, 1961, Dorothy Michael was in the Brown's Coin-O-Matic laundromat in the 8900 block on Reseda Boulevard from about 7 p. m. until after 8 p. m. After she had put some clothing into a machine she sat down on a bench and placed her purse beside her. Two boys entered the laundromat, walked to the back, came back through and went out the

front entrance. Appellant was one of the two boys. The boys reentered the laundromat and when they came close to Mrs. Michael the boy nearest her grabbed her purse from the bench. She grabbed for the purse but apparently was unable to secure it as the boys continued to a car which was parked in the alleyway. Mrs. Michael's purse contained about $40, an $85 watch, a driver's license, an oil company credit card, photographs, glasses case, cosmetics and other items. She subsequently saw her watch in a pawnshop in Reseda.

On February 6, 1961, at about 11:30 p. m. Donald Zellers of the Los Angeles Police Department saw a car in the middle of an alley, with the lights out. Zellers and Officer Reeves, his partner, were driving a police car and as they approached the car with no lights it pulled to the right onto a dirt shoulder and into a vacant lot. The officers got out and approached the car, and Reeves questioned the driver, named Jones. It was observed that Jones was a juvenile. Zellers walked 50 feet or so from the car when he saw the appellant and another person approaching from the corner of a laundromat. Identification was requested and appellant complied. The appellant's companion, Conner, stated that he could not comply. Conner was 17 years of age and he was arrested as being a person under 18 years of age and without lawful business in the alley at that particular hour of the night. Conner was searched and two pawn tickets were found in his pockets. One of the tickets was from the pawnshop in Reseda and the other from a shop called the Hollywood Collateral Loan Association. Conner stated that the tickets belonged to the appellant. Appellant stated that such tickets were his and that he had given them to Conner to hold for him. Appellant stated that the watch which had been pawned in Reseda was a man's watch which his mother had given to him and which belonged to him, and that he had pawned it. He stated further that the other pawn ticket covered a ring which his mother had given to him. Later Officer Zeller found an oil company credit card made out to Mr. Michael in Conner's possession.

On February 7, 1961, at the police station, appellant stated in answer to certain questions about the Bulova watch which he had pawned in Reseda, that he had secured it from the glove compartment of an automobile in which he had been riding with Jones and Conner. Later in the day on February 7, 1961, some officers, appellant, Jones and Conner went to the vicinity of appellant's residence. As they approached a

carport the appellant stated that he had thrown a wallet ''up there'' and that it had come from the laundromat over near Oxnard and Hazeltine in Van Nuys. They then went to 14136 Tiara Street, where appellant stated in effect that they had thrown the purse from the Van Nuys laundromat under a trailer which was parked there. Mrs. Scott's handbag ultimately was found at this location.

The group next proceeded to Etiwanda Street near an emergency hospital where Conner, Jones and appellant directed that a turn be made to the left and upon their proceeding approximately 50 yards it was stated in effect that such was the location where they had thrown the articles from a purse. A photograph and lipstick were found in the area. The group continued to the Brown's Coin-O-Matic laundromat and appellant related in answer to questions that he and Conner had entered the laundromat, had gone to the rear and then back out of the front of the establishment: that they were outside for approximately five minutes and then had reentered the laundromat and while passing through appellant had grabbed the purse which was there, had run out through the rear door with the same and had entered a 1950 Ford in which Jones was seated, and that they then had proceeded south. Appellant further related that he had kept the lady's watch and on February 7, 1961, had pawned it in Reseda, where he had received $7.00. It was acknowledged that the purpose in entering the laundromat, for which the appellant was arrested, was to ''hit'' it in the same manner. Appellant's defense was that of an alibi.

Appellant now asserts that the evidence was insufficient to support the judgment; that the jury was prejudiced against him; and that a certain instruction was modified to his detriment. There is no merit to any of his assertions.

The evidence clearly shows that the crime of burglary was committed. The crime was completed when the entry under the circumstances was made. (*People* v. *Taylor*, 4 Cal. App.2d 214, 218 [40 P.2d 870].)

It is of no particular concern that the laundromat was a public place or that the entrance was during business hours. (*People* v. *Wilson*, 160 Cal.App.2d 606, 608 [325 P.2d 106].)

The circumstances in this case lead clearly to the conclusion that the entry was made with the intent to commit a theft. (*People* v. *Smith*, 84 Cal.App.2d 509, 512 [190 P.2d 941]; *People* v. *Vitos*, 62 Cal.App.2d 157, 160 [144 P.2d 393].)

In this case the defendant had no legitimate business in the establishment and he admitted to the taking of the purse and its contents. Furthermore the episode of February 2, 1961, indicates a plan of similar action. The evidence given by the police with reference to the Bertha Scott transaction was admissible. (*People* v. *Grimes,* 113 Cal.App.2d 365, 370-373 [248 P.2d 130].)

There can be no doubt about the identification of the defendant and in any event it was a question of fact for the jury to determine. (*People* v. *Shaheen,* 120 Cal.App.2d 629, 637 [261 P.2d 752].)

The appellant further demonstrated a thorough and complete knowledge of the whereabouts of some of the items which were stolen in the two thefts.

The alibi witnesses of the appellant apparently were not believed by the jury. Their credibility was a matter for the jury to determine.

A reading of the entire record does not disclose in any respect that the jury was prejudiced against the appellant. At the conclusion of the trial the judge complimented the jury for their care and attention and their work in the matter, and further stated that in his opinion the verdict was correct and a proper solution to the charge. ▆▆▆ It is contended that the jury was not properly questioned at the time of the impanelment. Appellant made no proper request pursuant to the Rules on Appeal for that part of the reporter's transcript which contains the examination of the prospective jurors. The record of the questioning of the prospective jurors is therefore not before us. A general assignment of prejudice of the jury in the absence of some proof thereof in the record merits no consideration. (*People* v. *Isby,* 30 Cal.2d 879, 896 [186 P.2d 405].) The jury is presumed to have performed its duty. (Code Civ. Proc., § 1963, subd. 15.)

▆▆▆ After the jury was instructed it was called to the attention of the judge that under no circumstances could the burglary in question be other than burglary in the second degree. The jury was immediately recalled and so instructed. This procedure was proper. (*People* v. *Hewitt,* 11 Cal.App.2d 197, 199 [53 P.2d 365].)

The appellant was adequately and skillfully represented. There was no denial of any of his right. The appellant obviously was guilty as found by the jury. The fact that counsel for appellant was not able to convince the jury and the judge

of appellant's supposed innocence is not indicative in any respect of poor representation.

The judgment and the order denying the motion for a new trial are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.