The New York law on vicarious liability is therefore applicable.

630 A.2d 855

STATE OF NEW JERSEY, PLAINTIFF,
v. DAVID BERKEY, DEFENDANT.

Superior Court of New Jersey
Law Division Somerset County

Decided May 21, 1993.

*Frank Kolodzieski,* Assistant Prosecutor, for the State (*Nicholas L. Bissell, II,* Somerset County Prosecutor, attorney).

*Anthony J. Mignella,* Assistant Deputy Public Defender, for the defendant (*Zulima V. Farber,* Public Defender, and *Brenda B. Smith,* Deputy Public Defender for Somerset County, attorneys).

IMBRIANI, P.J.Cr.

The issue in this case is whether a person who is not a tenant in a garden apartment complex can be charged with burglary if he enters the laundry room in the basement of one of the apartment buildings with the purpose to commit an offense therein by stealing money from coin-operated machines. *N.J.S.A.* 2C:18–2 defines burglary as the entry into a structure with the intent to commit an offense therein "unless the structure was at the time open to the public or the actor is licensed or privileged to enter."

For purposes of this motion to dismiss the charge of burglary the defendant does not deny that he entered the laundry room to steal coins from washing machines and that he actually removed a coin mechanism from one of the machines. His contention is that the laundry room is "open to the public" and he was, therefore, in essence a "business invitee" or, in the alternative, he was "privileged to enter" the laundry room. Consequently, he argues that it is irrelevant that he did not receive permission or authorization from anyone to enter the laundry room.

On November 18, 1992, police responded to a complaint that someone was attempting to break into the laundry room of an apartment complex. When the officer approached the laundry room he heard a metallic noise inside the room. Within moments he observed the defendant exit the laundry room, holding in his

left hand an unidentifiable object which he appeared to be hiding. The officer drew his revolver and ordered the defendant to stop and drop whatever he was holding. When the defendant complied, the officer heard a loud clanging noise as the object fell to the floor near the door.

When back-up officers arrived, a search of the laundry room revealed that the coin mechanism of a washing machine had been removed. It was located near the door of the laundry room.

The door to the laundry room was closed but unlocked and there were no posted signs prohibiting non-tenants or strangers from entering.

■ The core of the common law concept of burglary was the breaking and entry into a dwelling at night with the intent to commit a felony therein. *State v. Hauptmann*, 115 *N.J.L.* 412, 180 *A.* 809 (E. & A.), *cert. denied*, 296 *U.S.* 649, 56 *S.Ct.* 310, 80 *L.Ed.* 461 (1935). The scope of this offense has been substantially enlarged by statute and because burglary is often punishable more severely than the crime which the actor intended to commit within the structure this has produced serious anomalies in prosecution and punishment. For instance, here the defendant committed the crime of theft of less than $200, which is a disorderly persons offense punishable by up to six months in the county jail. If he also committed a burglary, he has committed a drastically more severe third degree offense which is punishable by up to five years in prison.

■ The defendant does not dispute that he was not invited or authorized to enter the laundry room by the landlord or any tenant. He was a stranger simply passing through. He argues that the laundry room was "open to the public" or, to put it another way, he was "privileged to enter" because the laundry room was in essence a commercial establishment. He contends that since the laundry room was being operated as a business (the washing machines were coin-operated as in any commercial laundromat) he, like any member of the public, was impliedly invited

to enter and use the laundry room. Thus, he argues that it is irrelevant that he did not have express "permission" or "authorization" from the landlord or a tenant to enter the laundry room.

The Commentary to *N.J.S.A.* 2C:18–2 (emphasis added) states that:

"A person is 'privileged' to enter, within the meaning of Section 2C:18–2, if by license, custom, or *otherwise,* the general public is invited or permitted to enter....."

The defendant stresses that there were no posted signs limiting the use of the laundry room to tenants only, and the door to the laundry room, through which he gained entrance, was apparently always kept unlocked. Thus he argues that since the public was not specifically prohibited from entering the laundry room, the absence of a specific prohibition means that the public is "otherwise" invited or permitted to enter.

No case in New Jersey has ever addressed this issue but several courts in other states have and they hold that the laundry room of an apartment complex is not "open to the public," nor is the public "privileged" to enter, with the exception of *People v. Taylor,* 114 *Misc.*2d 680, 452 *N.Y.S.*2d 526 (Sup.Ct.1982), which held that whether a building was "open to the public" was a jury issue.

If the laundry room was always kept locked and entrance could be gained only with a key which was given to all tenants, we would have no difficulty in finding that it was not open to the public and the defendant was not permitted to enter. *See State v. Porter,* 705 *P.*2d 1174 (Utah 1985).

Moreover, we are satisfied that the intent to steal when the defendant entered the laundry room of an apartment complex, although necessary to sustain a charge of burglary, is irrelevant to the issue of whether the entry constituted burglary. *People v. Hildreth,* 202 *Cal.App.*2d 468, 21 *Cal.Rptr.* 5 (1962).

We believe that the failure to post a sign limiting the use of the laundry room to tenants and to keep all entrance doors locked is not fatal to this indictment. The issue is what would a reasonable person believe was the intended use of the laundry room? Was it

installed by the landlord for a commercial purpose and available for use by the public at large, or was its use intended to contribute solely to the comfort and convenience of the tenants?

We hold that it was or should have been clear to any reasonable person that the laundry room was not open to the public as a commercial enterprise, but was intended solely for the limited purpose of enhancing the comfort and convenience of the tenants. The landlord did nothing to suggest or encourage others to use the laundry room and his failure to post signs or lock the doors should not result in any reasonable person believing otherwise. In *State v. Byrd*, 646 *S.W.*2d 419 (Mo.Ct.App.1983) an apartment complex had a laundry room in a separate building. The only posted sign said, "Please Keep Door Shut!" There were no signs limiting access to any group of persons. Inside was coin-operated laundry equipment. The Court upheld a burglary conviction and said:

> this was an apartment complex, with a provided laundry room for the use of its tenants only—a well-known practice in these times of apartment dwelling, when the general public is not invited to use [such] laundry facilities.

*Id.* at 421.

In *Stewart v. Commonwealth*, 793 *S.W.*2d 859 (Ky.Ct.App.1990), although the structure involved the basement of a residence, the court observed that the "offense of burglary was aimed at the security of property." *Id.* at 860. Thus, the inquiry whether the area was "open to the public" or the defendant was "privileged" to enter should focus on whether the use of the area was for a commercial enterprise to which the public was invited, or a private enterprise intended only to contribute materially to the comfort and convenience of habitation by those who occupied the building.

■ When dealing with private property the law does not impose a public use unless it is clearly demonstrated that that is what the owner intended. What the law does is throw around the habitation area of any residence, be it a single-family home or a large apartment, a protective mantle so that it may become a place

of family repose free from intrusion by strangers and secure for the quiet and peace of family members who reside therein. Anyone who breaches or intrudes into this protective mantle to commit a crime therein is guilty of burglary.

I am satisfied that it was the purpose and intent of the landlord and tenants, and was clear to all strangers to the apartment complex, that the laundry room was not a commercial enterprise "open to the public," nor was the public "privileged" to enter. The defendant could not reasonably have believed otherwise. Consequently, the motion to dismiss the burglary charge is denied.