[Crim. No. 2956.   Fourth Dist., Div. One.   Apr. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY R.
MEISON et al., Defendants and Appellants.

Carl L. Fabbroni, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Asssitant Attorney General, and Marvin S. Maltzman, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—David O. Ledesma, Robert L. Conley and Larry R. Meison were convicted in a nonjury trial of possessing marijuana (Health & Saf. Code, § 11530). The trial court committed them for narcotics addiction (Welf. & Inst. Code, § 3051). They appeal from orders denying their motions for a new trial (Pen. Code, § 1237, subd. 2).

As a parole officer, Department of Corrections Nar-

cotics Agent Lewis Anderson Mitchell, Jr., supervises former narcotics addicts released from the California Rehabilitation Center at Corona. On March 17, 1967 the center released Leddesma directing him to report to Mitchell in San Diego, Ledesma did not report to Mitchell. Mitchell learned Ledesma, in violation of the conditions of his release, was associating with known narcotics addicts, had changed his residence without telling Mitchell and getting his approval, had failed to maintain employment and had not submitted a monthly report. Until April 10, 1967, Mitchell did not know where to find Ledesma. On April 10, 1967, Mitchell learned Ledesma was living with former narcotics addict Conley at a San Diego address. Mitchell arranged for San Diego police officers and State Bureau of Narcotic Enforcement agents to help him take Ledesma and Conley into custody for the violations of their release conditions.

Mitchell and his team went to the San Diego address to get Ledesma and Conley. Outside the house, they waited 20 to 30 minutes, watching a car parked nearby to see if its occupants might go inside the house. Finally, Mitchell talked with the car's occupants. Mitchell and most of his team then went to the back porch. Mitchell saw someone's silhouette on the partially glass back door's shade. Without knocking or announcing his purpose, Mitchell stepped forward, reached for the door, opened it and entered the house.

Officer Myrann, one of the San Diego police officers accompanying Mitchell on the back porch saw someone peek out from behind the shade. About that moment Mitchell entered the house. Myrann did not communicate what he saw to Mitchell before Mitchell led the way into the house. Inside the house, the officers observed, in plain sight on a coffee table in the living room, marijuana which the trial court admitted into evidence over objection.

Citing Penal Code, section 844, defendants contend Mitchell's entry into the house was unlawful because he did not knock and announce his purpose. We agree. Under Welfare and Institutions Code, section 3151, peace officers must execute orders suspending the release of outpatients from the California Rehabilitation Center in like manner as ordinary criminal process. Mitchell, therefore, as a peace officer (Pen. Code, § 817), should have complied with Penal Code, section 844.

*People* v. *Arellano,* 239 Cal.App.2d 389 [48 Cal.Rptr. 686], and *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437

P.2d 489], deal with parolees rather than outpatients from the California Rehabilitation Center. To the extent they require parole officers to comply with Penal Code, section 844, they buttress the decision here involving an outpatient who, unlike a parolee, is not by the fact of release deprived of any civil rights.

Compliance with Penal Code, section 844 will be excused if on the facts known to him before his entry the peace "officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence." (*People* v. *Rosales, supra,* 68 Cal. 2d 299, 305.) Here the trial court found circumstances permitting noncompliance: the general propensity of narcotics violators to destroy evidence. This was error (*People* v. *Gastelo,* 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 305). Mitchell testified he broke in because he did not have to knock. The court felt Mitchell did not think evidence would be destroyed if he knocked and announced his purpose. Nothing indicates Mitchell knew anything which would justify noncompliance with Penal Code, section 844. Because Mitchell's knowledge and belief determine whether his noncompliance was justified, Officer Myrann's uncommunicated observations cannot be considered.

Orders reversed.

Coughlin, J., and Whelan, J., concurred.