[Crim. No. 12675.   Second Dist., Div. Five.   Sept. 24, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT EARL TAYLOR, Defendant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

H. Randolph Moore, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

HUFSTEDLER, J.—Defendant appeals from an order granting him probation after he was found guilty by the court, sitting without a jury, of violating section 11530 of the Health and Safety Code (possession of marijuana), and from the order denying his motion for a new trial. Two prior felony convictions, one for forgery and the other for petty theft with a prior, were found true. Defendant's codefendant, Mayfield, was acquitted.

## SUMMARY OF THE EVIDENCE

On March 17, 1966, between 3:30 and 4 p.m., defendant's parole officer, Robert Winlock, accompanied by State Parole

Officer Eugene L. Arnold, went to the defendant's apartment. Mr. Winlock knocked on the door. The door "must have been ajar" and it swung open. The parole officers could see Mr. Mayfield standing in between the kitchen and a living-room-bedroom combination. Mr. Winlock greeted Mayfield, saying, "Hi, is Robert Taylor here?" Mr. Mayfield said that he was not. The two parole agents, without any further conversation, proceeded into the apartment and told Mr. Mayfield that they would wait for Mr. Taylor's arrival. When the parole officers were in the apartment, Agent Arnold saw a package of zigzag papers on the dresser and another package of the same type of papers on a small table near the bed. The two parole agents conducted a thorough search of the apartment and eventually discovered a white envelope containing marijuana concealed within the zippered covers of a decorative pillow on the bed.

After the contraband had been found, Mr. Arnold left the apartment to notify the police. Upon Arnold's return, the defendant was in the apartment. The police officers arrived about a half hour after Arnold's return to the apartment. Arnold turned the contraband over to the police officers.

Officer Wanek, one of the police officers who responded to Arnold's telephone call, placed Mr. Mayfield and Mr. Taylor under arrest. At that time both Mr. Mayfield and Mr. Taylor were given warnings adequate to comply with the *Dorado* and *Escobedo* cases,[1] but inadequate to comply with the *Miranda* case.[2] The warning failed to include a statement advising them that if they were unable to afford counsel, counsel would be supplied to them. No objection was made, however, to the receipt of the extrajudicial statements made by either Mayfield or Taylor following the inadequate advice.

Mayfield told the officers that he had moved into the apartment at Mr. Taylor's invitation about two weeks before. He denied any knowledge of the presence of marijuana. Taylor said he had lived in the apartment for some time. He also denied any knowledge of the marijuana, but admitted that the zigzag cigarette papers belonged to him. A search of the persons of both Mayfield and Taylor did not reveal any contraband.

The packet of marijuana recovered from Taylor's apartment was introduced into evidence, and the parties stipulated

[1] *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

that the substance contained therein was marijuana. Taylor and Mayfield, each testifying in his own behalf, denied any knowledge of the presence of the marijuana in the apartment and each denied using marijuana.

Defendant contends (1) the trial court prejudicially erred in denying his motion to suppress, and (2) the evidence was insufficient to convict. We reject both contentions.

■ As the defendant necessarily concedes, the civil rights of a parolee are severely restricted. (E.g., *People* v. *Quilon* (1966) 245 Cal.App.2d 624 [54 Cal.Rptr. 294]; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205 [46 Cal.Rptr. 743].) There is no legal barrier to a parole officer's unrestricted search of his parolee's residence except the provisions of section 844 of the Penal Code.[3] (E.g., *People* v. *Limon* (1967) 255 Cal.App.2d 519, 521-522 [63 Cal.Rptr. 91]; *People* v. *West* (1967) 253 Cal.App.2d 348, 354 [61 Cal.Rptr. 216]; *People* v. *Arellano* (1966) 239 Cal.App.2d 389 [48 Cal.Rptr. 686]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143 [40 Cal.Rptr. 100].)

■ If the officers failed to comply with section 844 of the Penal Code, the entry was illegal and the subsequent search and seizure were likewise illegal unless, as the People contend, there was adequate consent to the entry.

In *People* v. *Rosales* (1968) 68 Cal.2d 299, 303 [66 Cal. Rptr. 1, 437 P.2d 489], the Supreme Court said that there is a breaking within the meaning of section 844 "at the very least" if there is an unannounced entry "that would be considered breaking as that term is used in defining common law burglary." To constitute a breaking for that purpose "no more is needed 'than the opening of a door or window, even if not locked, or not even latched. Pulling open a screen door held closed only by a spring is sufficient.' . . ." (*Ibid.*)

We have concluded that the acts of the officers in this case would not have constituted a breaking as that term has been defined in common law burglary cases. According to the uncontradicted evidence, defendant's parole officer knocked on the door. There is no indication that the knock was anything more than an ordinary, polite rapping upon the door. The door was apparently ajar, and it swung open without any

---

[3] "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

other action on the part of either of the officers. Neither of them turned a door knob or exerted any other force upon the door for the purpose of causing it to open. Nothing in the evidence supports an inference that either officer had reason to believe that the door would swing open in response to the knock. We have discovered no case which applies the common law definition of "breaking" to a factual situation identical to that in our case. At common law it was not regarded as a breaking to enter through an open door. (2 Wharton's Criminal Law and Procedure (Anderson's 12th ed. 1957) § 413, p. 37.) On the other hand any force, no matter how slight, used to open partially or wholly a closed door, was considered a breaking for that purpose. The swinging open of a door upon being subjected only to a rapping of the kind that is a common prelude to a request for admission, is more analogous to the open-door cases than it is to the second category of cases above described.

Although defendant's parole officers did not make the announcements prescribed by section 844 of the Penal Code, their acts did not constitute a breaking at common law. The facts therefore do not come within the holding of the *Rosales* case.

We do not believe that the Supreme Court in the *Rosales* case, however, intended the interpretation of section 844 to rest wholly upon the niceties of definition found in common law burglary cases. It may well be that under all of the circumstances of a particular case, the conduct of a parole officer anteceding his entry into a parolee's residence might constitute a breaking within the meaning of section 844 even if the conduct fell short of a breaking as that term was used in the common law. On the facts of this case, however, we do not believe that either the spirit or the letter of section 844 was violated. Officers Winlock and Arnold did not enter the defendant's apartment at the moment the door swung open. They did not rush into the room. After the door opened following Officer Winlock's rap, the officers saw Mr. Mayfield standing in the middle of the room in front of them. Officer Winlock greeted Mayfield and asked him if the defendant were there. After Mr. Mayfield said that Mr. Taylor was not there, the two officers entered the room and told Mr. Mayfield that they would wait for the defendant.

The trial court in ruling upon the motion to suppress commented that there was no forced entry in this case and that Mayfield "impliedly if not actually invited them in." The record amply supported the trial judge's statements.

Defendant's final contention is that the evidence was insufficient to support the order. The contention is based upon arguments challenging the weight which should be accorded to the evidence. The argument is not seriously pressed because defendant's counsel is well aware that the weighing of evidence is the function of the trial court, with which the appellate court cannot interfere. Disregarding matters of credibility and evaluation of the evidence, which we must on appeal, there was ample evidence to sustain the trial court's implied finding of guilt.

The judgment (order granting probation) is affirmed. The attempted appeal from the order denying defendant's motion for a new trial, a nonappealable order, is dismissed.

Kaus, P. J., and Stephens, J., concurred.