[Crim. No. 6843.    First Dist., Div. One.    Dec. 10, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. ROBERT BEAMON, JR., Defendant and Respondent.

Thomas C. Lynch, Attorney General, Robert R. Granucci, Don Jacobson and George R. Nock, Deputy Attorneys General, for Plaintiff and Appellant.

Edward T. Mancuso, Public Defender, and Joseph I. McNamara, Deputy Public Defender, for Defendant and Respondent.

MOLINARI, P. J.—The People appeal from an order granting defendant's motion under Penal Code section 995[1] to set aside the indictment charging him with possession of forged

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

checks. (Pen. Code, § 475a.) The Attorney General contends that the evidence adduced before the grand jury was sufficient to hold defendant to answer. Defendant contends that because the only evidence before the grand jury was the direct product of an illegal search, it was insufficient.

In his testimony before the grand jury, Robert Martin, a police inspector attached to the San Francisco Police Narcotic Unit, testified that he learned from an all-points bulletin that defendant was wanted for parole violation; that in the course of his work as a police inspector he received information that defendant was at 1519 Oak Street in San Francisco; that at that address he first spoke with the management and showed them a picture of defendant and they identified the person in the picture as "the person who was living and paying the rent of Apartment No. 7"; that he next went to the vicinity of apartment 7; that he heard a telephone ringing and subsequently observed a female standing right outside of apartment 7 talking on a pay telephone; and that "she saw me and she dropped the phone and tried to bolt back into Apartment 7 and with that I followed her in and observed the defendant Beamon in a bedroom and placed him under arrest."

After arresting defendant, Martin searched the premises and found a number of checks of the Garehime Corporation in a package underneath the mattress of a bed. Four of the checks had been filled out, but the remainder were blank. A representative of the Garehime Corporation testified that the four checks which were filled out were a part of 50 payroll checks which had been taken from the corporation's premises during a burglary; that each of the four checks was a forgery; and that each was payable to a person never employed by the company.

There was no direct or indirect testimony before the grand jury that Inspector Martin did or did not have a warrant and there was no indication as to whether or not he was in a police uniform at the time of the arrest and search.

The issue in the present case is not whether we are to resolve conflicts in the evidence or to reweigh the evidence, which we may not do (*Jackson* v. *Superior Court,* 62 Cal.2d 521, 530 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *Landry,* 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; see *People* v. *Brice,* 234 Cal.App.2d 258, 272 [44 Cal.Rptr. 231]), but whether competent evidence was submitted to the grand jury. If, as contended by defendant, the *only* evidence before the grand jury was the direct product of an illegal search, there was no competent evidence for the grand jury to consider and

there would be no reasonable or probable cause for the indictment. (See *People* v. *Govea*, 235 Cal.App.2d 285, 305 [45 Cal. Rptr. 253]; *People* v. *Beasley*, 250 Cal.App.2d 71, 78 [58 Cal. Rptr. 485]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Valenti*, 49 Cal.2d 199, 203 [316 P.2d 633].)

Defendant maintains that both the entry of the police into his apartment and his arrest were unlawful because of the failure of the police to comply with the provisions of section 844, and, therefore, the subsequent search and seizure was illegal.[2] Section 844 provides as follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The California Supreme Court recently discussed and applied this code section in the case of *People* v. *Rosales*, 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]. In *Rosales*, the police officers had knowledge that an all-points bulletin had been issued for the defendant because of parole violation. Accompanied by a parole officer, the police officers went to the defendant's house where they gained entry by opening an unlocked screen door. They did not demand admittance or explain their purpose, although they did identify themselves as police officers to a young woman before they arrested the defendant. After the arrest, which took place in the house, the officers searched the defendant and found heroin on his person. He was convicted of possession of heroin and the Supreme Court reversed, holding that the failure of the officers to explain their purpose and demand admittance as required by section 844 vitiated the arrest (although the arrest was justified because the defendant was a parole violator), and that since the entry was unlawful, the search was illegal. The rationale of *Rosales* is that section 844 is designed to protect the fundamental right deeply rooted in our heritage that a person cannot lawfully be arrested in his home by officers breaking in unless the officers first give him notice of their authority and purpose. (Pp. 304-305.) In discussing the purpose of section 844 the Supreme Court noted, further,

[2] Defendant also claims that the entry and arrest were in violation of the United States and California Constitutions but he cites no authority and makes no argument to support the contentions. His argument centers around violation of section 844.

that "The statute reflects more than concern for the rights of those accused of crime. It serves to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made." (P. 304.) *Rosales* holds, however, that noncompliance with section 844 may be excused when the officer acts on a reasonable and good faith belief, based on the facts of the particular case, "that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence." (P. 305.)

Before proceeding with an analysis of the present case in the light of *Rosales*, we note that in *People v. Taylor*, 266 Cal.App.2d 14 [71 Cal.Rptr. 886],[3] it was held that the entry of parole officers into the defendant's apartment did not violate section 844 where they knocked on the door in normal fashion and the door swung open of its own accord. In so holding the appellate court took cognizance of the statement in *Rosales* that section 844, "At the very least, . . . covers unannounced entries that would be considered breaking as that term is used in defining common law burglary" (68 Cal.2d at p. 303), but concluded that the acts of the officers in the case before it "would not have constituted a breaking as that term has been defined in common law burglary cases." (P. 17.) *Taylor* is predicated on the principle that at common law an entry through an open door was not regarded as a breaking. (See 2 Wharton's Criminal Law and Procedure (Anderson's 12th ed. 1957) § 413, p. 37; Burdick, The Law of Crime (1946) § 703a, p. 27; and see *Ker v. California*, 374 U.S. 23, 47 [10 L.Ed.2d 726, 746, 83 S.Ct. 1623].) *Taylor* opines, however, that *Rosales* did not intend that the interpretation of section 844 should "rest wholly upon the niceties of definition found in common law burglary cases." (P. 18.) We note, however, that in *Taylor* there is a strong suggestion that the decision rests upon the particular facts of the case which disclose that the officers did not enter the apartment at the moment the door swung open but that they did so at the implied invitation of a man they saw standing in the middle of the room in front of them. (P. 18.)[4]

---

[3]A petition for a hearing by the Supreme Court was denied.

[4]*People v. Bradley*, *(Cal.App.) 70 Cal.Rptr. 339, relied upon by the People in the instant case, holds, among other things, that "the common law and the law of this State is that an entry through an open door is not a breaking open of a door (Pen. Code, § 844). . . ." (P. 276.) We here note that the Supreme Court has granted a hearing in the *Bradley* case.

*A hearing was granted by the Supreme Court on October 23, 1968.

Although *Rosales* differs factually from the instant case in that there the officer opened an unlocked door while here the officer walked through an open door, in both cases the officer did not demand admittance nor explain his purpose before entering the premises. It is significant to note, moreover, that although *Rosales* appears to equate the entry encompassed in section 844 with the term "breaking" as used in common law burglary, the Supreme Court specifically refrained from deciding in that case whether any entry without permission is a breaking. (68 Cal.2d 299, 303, fn. 4.) Accordingly, we are inclined to agree with the *Taylor* case insofar as it concludes that *Rosales* does not require that the interpretation of section 844 "rest wholly upon the niceties of definition found in the common law burglary cases."

In our opinion an open door does not excuse noncompliance with section 844 unless noncompliance is otherwise excused under the rule declared in *Rosales*.[5] Accordingly, a peace officer may not enter through an open door of a house without first demanding admittance and explaining the purpose for which admittance is desired unless he reasonably and in good faith believes that such compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. We are persuaded to this conclusion by the purpose of section 844 as declared in *Rosales* and by the clear language of the section which does not restrict the required announcement to any particular type of entry by the police officers. (See *People* v. *Gastelo*, 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706].) Moreover, if analogy to the law of burglary is required, we note that in California no breaking or forceable entry is required in proof of the commission of a burglary (*People* v. *Garcia*, 214 Cal.App.2d 681, 683 [29 Cal.Rptr. 609]; *People* v. *Chambers*, 189 Cal.App.2d 780, 785 [11 Cal.Rptr. 415]; *People* v. *Wilson*, 160 Cal.App.2d 606. 608 [325 P.2d 106]; *People* v. *Talbot*, 64 Cal.2d 691, 700 [51 Cal.Rptr. 417, 414 P.2d 633]; *People* v. *Sears*, 62 Cal.2d 737, 746 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Failla*, 64 Cal.2d 560, 568 [51 Cal. Rptr. 103, 414 P.2d 39]) and, accordingly, that a burglary can be committed by entering through an open door or win-

[5] We also note that noncompliance with section 844 is not excused because the person arrested is a parole violator. (*People* v. *Rosales, supra*, 68 Cal.2d 299, 303; see also *People* v. *Arellano*, 239 Cal.App.2d 389, 390-392 [48 Cal.Rptr. 686]; *People* v. *Stephens*, 249 Cal.App.2d 113 [57 Cal.Rptr. 66]; *People* v. *Welch*, 260 Cal.App.2d 221, 226 [67 Cal. Rptr. 69]; cf. *People* v. *Meison*, 261 Cal.App.2d 322, 323-324 [67 Cal. Rptr. 750].)

dow. (*People* v. *Allison,* 200 Cal. 404, 407-408 [253 P. 318]; *People* v. *Failla, supra,* at p. 569; *People* v. *Massey,* 196 Cal. App.2d 230, 236 [16 Cal.Rptr. 402].)

In the instant case we are of the opinion, however, that although there was no compliance with section 844, Inspector Martin was excused from such compliance because he could reasonably and in good faith have believed that such compliance would have frustrated defendant's arrest. The act of the female, in dropping the telephone and bolting back into the apartment when she saw Martin, justified a belief that she was bent on warning defendant of Martin's presence so that defendant could escape. Under these circumstances the conclusion that defendant would escape if Martin demanded entrance and explained his purpose is not unreasonable. (See *People* v. *Maddox, supra,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Carrillo,* 64 Cal.2d 387, 391-392 [50 Cal.Rptr. 185, 412 P.2d 377] [cert. den. 385 U.S. 1013 [17 L.Ed.2d 549, 87 S.Ct. 72]].)

Defendant argues that Martin was not really interested in apprehending defendant as a parole violator, but used the all-points bulletin as a pretext to search the apartment for narcotics. Defendant cites a number of authorities which establish the rule that where the search and not the arrest was the actual object of the officers entering the premises, the search cannot be considered reasonable. (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721]; *People* v. *Ghimenti,* 232 Cal. App.2d 76, 80-81 [42 Cal.Rptr. 504]). This rule has no direct application in the present case, because the record does not show that prior to the entry and arrest Inspector Martin was seeking defendant as a user or possessor of narcotics. Although the inspector speculated before the grand jury that the checks and identification found during the search in his opinion would be used to support a narcotics habit, the record does not reveal that the officers had any prior intent to search for narcotics. Nor can such a pretext be inferred from Martin's position with the Narcotics Unit. Under the state of the record Martin's purpose in entering the apartment and arresting defendant as a parole violator was valid and proper. To conclude that his purpose was to search for narcotics is mere speculation.

The order is reversed.

Sims, J., and Elkington, J., concurred.