[Crim. Nos. 15590, 16022. Second Dist., Div. Five. Dec. 4, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDERICK JASSO, Defendant and Appellant.

[Crim No. 16022. Second Dist., Div. Five. Dec. 4, 1969.]

In re FREDERICK JASSO on Habeas Corpus.

(Consolidated Appeals.)

## COUNSEL

Fred Kilbride, under appointment by the Court of Appeal, for Defendant, and Appellant and for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Philip C. Griffin and Jeffrey S. Wohlner, Deputy Attorneys General, for Plaintiff and Respondent and for Respondent.

## OPINION

**AISO, J.**—Frederick Jasso, defendant and appellant in superior court cases Nos. A-228982 and NDA-8728 and the subject of the habeas corpus proceedings, was an outpatient from the California Rehabilitation Center (CRC) on January 2, 1968. He had been committed (Welf. & Inst. Code, § 3051) to the CRC following his conviction for illegal possession of heroin (Health & Saf. Code, § 11500), but had been released on outpatient status on October 11, 1967.

On January 2, 1968, Allan H. Wiggenhorn, a state parole agent, received a telephone call from a person identifying himself as Arthur Garcia. Garcia stated that Jasso lived at a certain address in Los Angeles and inquired whether Jasso was under the supervision of that particular parole office.

Wiggenhorn checked the office files and ascertained that Jasso was a

person under supervision of his office. He further found in the file a report that Jasso's present whereabouts was unknown, that he was "an absconder" "in violation of his parole" who had failed to report for a narcotics' testing in November 1967, and who had changed his residence without his supervising agent's approval. The file also included an all-points bulletin for Jasso which the Narcotic Addict Evaluation Authority (Welf. & Inst. Code, § 3150) had put out.

Jasso's supervising agent, Sexton, was ill and unavailable on that date. So Wiggenhorn contacted the police and his assistant office supervisor, and decided to go out to apprehend Jasso. He and another parole agent met with two police officers about two blocks away from Jasso's residence around 6 p.m. that evening. They had a description of the residence on Hyde Park Terrace where Jasso was reportedly living, but not the exact house number. They also had a description of the car Jasso was reported to be driving. As they were searching the neighborhood, Jasso walked out of a house and got into the car which tallied with the description which Wiggenhorn had. Wiggenhorn approached him and inquired, "Are you Mr. Jasso?" When Jasso replied, "yes," he was taken into custody. A search of the car revealed no incriminating evidence.

At one point during this arrest and search, Jasso called out just his wife's name, "Teresa," in a very loud voice. Thereupon Wiggenhorn proceeded immediately to the house which Jasso had told him was his residence. He estimated that the distance between the point of Jasso's arrest and the house was around 30 feet. Jasso testified that it was around 100 feet.

Wiggenhorn knocked on the door. A person who identified herself as Mrs. Jasso opened the door. Wiggenhorn identified himself and ascertained that she knew of Mr. Sexton. He told her, "I am from Mr. Sexton's office, and we have taken your husband into custody, and it is my duty to search your home." He was standing right at the threshold of the door, which Mrs. Jasso had opened. Mrs. Jasso made no statement in response to Wiggenhorn's representation before he entered the residence. After he told her that he was "coming in" and that he "was going to search the premises," he and the two police officers entered the residence. The other parole agent remained outside with Jasso, but eventually came in after some time had elapsed.

The search of the apartment turned up the real evidence upon which the People instituted two separate criminal actions: (1) No. A-228553 for illegal possession of heroin for sale (Health & Saf. Code, § 11500.5), and (2) No. A-228982 for two counts of burglary (Pen. Code, § 459) and one count of receiving stolen property (Pen. Code, § 496). Convictions in both criminal actions led to a single consolidated narcotics addiction commit-

ment proceeding (No. NDA-8728) which culminated in defendant's commitment to the California Rehabilitation Center (CRC) as a narcotic addict (Welf. & Inst. Code, §§ 3051 et seq.)

No reason appears in the record why the two criminal actions growing out of one search and seizure were not consolidated for the trial court proceedings, except that No. A-228553 was filed about two weeks earlier than No. A-228982 and that defendant was represented by a privately retained counsel in the former and by a public defender in the latter.

### A. No. A-228553:

The information was filed on January 24, 1968. On February 8, 1968, in department 72 of the superior court, defendant's motions under sections 995 to set the information aside and 1538.5 to suppress evidence were denied. No pretrial review of the denials was sought by way of extraordinary writs.

The case was transferred for trial to department 109, where it was tried to the court sitting without a jury upon the transcript of the preliminary hearing. On March 21, 1968, the court found defendant guilty as charged. On April 11, 1968, the court denied defendant's motion for a new trial, adjourned criminal proceedings, and referred defendant to department 95 of the superior court pursuant to section 3051 of the Welfare and Institutions Code.

Department 95 committed defendant to the CRC as a narcotic addict on April 25, 1968, as shall be more fully explained below.

No appeal from the order denying defendant's motion for new trial was taken. Court-appointed appellate counsel seeks a review of this criminal conviction by a petition for a writ of habeas corpus, which this court ordered to be consolidated for purposes of hearing with the appeals from No. A-228982 and No. NDA-8728.

### B. No. NDA-8728:

Following the reference of defendant to it under case No. A-228553, department 95, Commissioner James B. Reese, judge pro tempore of the superior court, presiding,[1] by its order made on April 25, 1968 (but not entered until April 29, 1968) committed defendant to the CRC. Review of

---

[1]Both counsel upon appeal agree that no issue because of the committing judge being a commissioner acting as a temporary judge (*People* v. *Tijerina* (1969) 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680]) is before us, since there is a later recommitment order made by a regular judge of the superior court. However, the validity of the order of April 25, 1968, upon other grounds is before us and will be taken up later.

this order of commitment is sought by virtue of a notice of appeal filed by a deputy public defender.[2]

After defendant's conviction in No. A-228982 and his reference to department 95, that department on May 7, 1968, ordered the petition upon which the proceedings were commenced to be amended to reflect a conviction for a Penal Code section 496 violation in addition to the Health and Safety Code section 11500.5 violation. Defendant seeks review of this order by way of the notice of appeal filed in the criminal action No. A-228982, *infra,* which characterized the order of May 7, 1968, as one "committing defendant to the CRC."

C. *No. A-228982:*

The information in this case was filed February 6, 1968, and later amended to charge a previous conviction for a violation of section 11500 of the Health and Safety Code. On April 16, 1968, department 74 of the superior court denied defendant's motion to suppress evidence under section 1538.5 of the Penal Code. No pretrial review by way of petition for an extraordinary writ was sought.

Following defendant's commitment on April 25, 1968, to the CRC (No. NDA-8728) under proceedings stemming from the other criminal action (No. A-228553), defendant then on May 3, 1968, pleaded "guilty" to count III (receiving stolen property) in this case. The allegation of a prior felony conviction was ordered stricken and defendant was referred to department 95 pursuant to section 3051 of the Welfare and Institutions Code.

On May 6, 1968, department 74 made another order which ordered the criminal proceedings in this case adjourned[3] and the defendant referred to department 95, and which also showed defendant's commitment to the CRC on April 25, 1968, in case No. NDA-8728.[4]

On May 14, 1968, the judge presiding in department 74 issued a certificate of probable cause, purportedly pursuant to section 1237.5, subdivision (b), of the Penal Code, which reflected that the court's denial of defendant's motion to suppress evidence made under section 1538.5 of the Penal Code raised a constitutional question.

On May 16, 1968, the deputy public defender filed a notice of appeal

---

[2]A different deputy public defender than the one who was defense counsel in No. A-228982.

[3]The earlier order of May 3, 1968, is silent as to whether criminal proceedings were adjourned.

[4]This order appears to be the basis of department 95's order of May 7, 1968, ordering the petition in No. NDA-8728 amended to reflect a conviction for a violation of section 496 Penal Code.

indicating that defendant was appealing from (1) his guilty plea, (2) the order of April 16, 1968, denying his motion made under Penal Code section 1538.5, (3) the judgment of conviction, (4) the order of referral to department 95, and (5) the order of May 7, 1968, "committing defendant to the CRC."

On June 6, 1968, the criminal proceedings in this case were ordered off calendar.[5]

## I.

The gravamen of Jasso's plaint is that the two criminal convictions and his resultant commitment to the CRC all rest upon real evidence obtained by an illegal search and seizure, which the trial courts in the two criminal actions erroneously refused to exclude under his motions to suppress under section 1538.5 of the Penal Code. He seeks reviews of these rulings by the three-pronged attack detailed above. The only matters properly before this court in these consolidated appellate proceedings are: (1) in No. A-228982: the appeal from the "judgment of conviction"; (2) in No. NDA-8728: the order of commitment made by department 95 on April 25, 1968; and (3) in No. A-228553: the petition for writ of habeas corpus seeking a belated review of the order denying defendant's motion for a new trial.

In No. A-228982, no sentence had been pronounced, so there was no appealable judgment as of May 16, 1968, when defendant's notice of appeal was filed.[6] (*People* v. *Murphy* (1969) *supra,* 70 Cal.2d 109, 115.) However, for reasons we shall elaborate on later, we shall treat the appeal from the order of commitment assimilated to an appealable judgment under the 1968 amendment to section 1237, subdivision 1, of the Penal Code. ■ There is no direct appeal from a guilty plea; the appeal must be taken from the ensuing judgment of conviction (Pen. Code, § 1237; 2 Cal. Criminal Law Practice (Cont.Ed.Bar 1969) § 20.38 p. 253). ■ An order denying a defendant's motion to suppress evidence under section 1538.5 of the Penal Code is reviewable by a pretrial petition for writ of mandate or prohibition or by an appeal from the judgment of conviction. (Pen. Code, § 1538.5, subds. (i), (m).) There is

---

[5] A schematic diagram more clearly depicting the chronology and interrelation of the respective procedural steps taken in the two criminal actions and the civil commitment proceeding was prepared, but had to be abandoned as being too long to print on a single page of the published opinion.

[6] Penal Code section 1237, subdivision 1, was amended in 1968, after defendant filed his notice of appeal, so that now "The commitment of a defendant for narcotics addiction shall be deemed to be a final judgment within the meaning of this section 90 days after such commitment." (Stats. 1968, ch. 315, § 2; *People* v. *Murphy,* 70 Cal.2d 109, 115, fn. 4 [73 Cal.Rptr. 147, 447 P.2d 939].)

no appeal from the order itself. The order of referral to department 95 (Welf. & Inst. Code, § 3051) is not a final order; the appeal is from the order of commitment. (*People* v. *Murphy* (1969) *supra,* 70 Cal.2d 109, 114-115.) The order of May 7, 1968, made by department 95, is described as an order "committing the defendant to the Narcotic Rehabilitation Center"; however, the record before us indicates that it was an order merely amending the petition filed in NDA-8728 to show a conviction for receiving stolen property as well as a violation of Health and Safety Code section 11500.5. The only basis upon which this May 7, 1968, order can be reviewed is its being an order made after a final judgment (order) in a special proceeding (Code Civ. Proc., § 904.1, subd. (b)). However, the notice of appeal from this order was lodged in the criminal case No. A-228982 and not in No. NDA-8728.

██ In No. NDA-8728, the notice of appeal filed June 25, 1968, from the order of commitment entered April 29, 1968, was a timely notice. (*In re De La O* (1963) 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], cert. denied, 374 U.S. 856 [10 L.Ed.2d 1076, 83 S.Ct. 1927]; cf. *People* v. *Bachman* (1955) 130 Cal.App.2d 445, 448 [279 P.2d 77]; *In re DeBaca* (1961) 197 Cal.App.2d 672, 674-675 [17 Cal.Rptr. 554].) Review of the order of commitment within the limits cognizable under *People* v. *Murphy* (1969) *supra,* 70 Cal.2d 109, 114-115 and *In re Bevill* (1968) 68 Cal.2d 854 [69 Cal.Rptr. 599, 442 P.2d 679] is therefore properly before us.

In No. A-228553, no appeal was taken from the then appealable order denying defendant's motion for a new trial. (Pen. Code, § 1237, subd. 2 (as of April 25, 1968; *People* v. *Murphy, supra,* at p. 114.) Belated review of that order and the order denying defendant's motion to suppress evidence, which was reviewable on appeal from the order denying a new trial, depends upon whether Jasso is entitled to a writ of habeas corpus for lack of adequate representation of counsel.

## II.

██ The search and seizure was illegal since it was conducted in violation of defendant's rights under the Fourth and Fourteenth Amendments. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].) No issue of consent to the entry into the residence is involved in this case. The parole agent, acting as a supervising agent under the Narcotic Addicts Commitment Law, acted upon the theory

that an outpatient's status was completely identical to that of a parolee. This is not true.[7] ■ While there are criminal aspects to narcotics addiction proceedings (*People* v. *Moore* (1968) 69 Cal.2d 674, 681-682 [72 Cal.Rptr. 800, 446 P.2d 800]), a commitment under sections 3050 et seq. of the Welfare and Institutions Code is deemed nonpenal and civil in character. (*In re De La O* (1963) *supra,* 59 Cal.2d 128, 156; *In re Trummer* (1964) 60 Cal.2d 658 [36 Cal.Rptr. 281, 388 P.2d 177].) ■ A parolee is a sentenced felon and in law is deemed "civilly dead" for certain purposes under section 2600 of the Penal Code. (See 2 Cal. Criminal Law Practice (Cont.Ed.Bar 1969) § 23.24 pp. 478-479.) The outpatient's civil rights have not been lost, except as curtailed by the conditions deemed necessary to supervise his cure. (*In re Trummer* (1964) *supra,* 60 Cal.2d 658, 661-662; *People* v. *Moore* (1968) *supra,* 69 Cal.2d 674; Welf. & Inst. Code, §§ 3151, 3152.) His status is more analogous to that of a defendant who has been placed on probation without imposition of a felony sentence. "The probationer [whose guilt has been established by plea, finding, or verdict, but who has not been sentenced to prison] still retains his ordinary civil rights, unless the court has restricted them" (*People* v. *Banks* (1959) 53 Cal.2d 370, 386-387 [1 Cal.Rptr. 669, 348 P.2d 102]) as a condition of probation. (See *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 150 [40 Cal.Rptr. 100], cert. denied, 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; 2 Cal. Criminal Law Practice (Cont.Ed. Bar 1969) § 19.62 p. 174, § 19.63 p. 176.) ■ A probationer enjoys the protection of the constitutional guarantees against unreasonable searches and seizures of his home (*Martin* v. *United States* (4th Cir. 1950) 183 F.2d 436, 439), absent some other legal basis for the search.

■ The document entitled "Conditions of Release to Out-Patient Status" signed by Jasso does not contain any waiver of this constitutional protection as to his residence nor any consent to a search thereof. Defendant also testified that he gave no such consent. Hence, parole agent Wiggenhorn's reliance upon Jasso's being in a parolee's status to justify his search was misplaced, even though it was a mistake made by him in good faith. The search can be upheld only if there was some other legal basis to justify it. (*People* v. *Gallegos* (1964) 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174].)

In most cases where the search of the living premises of an outpatient, who is in violation of his conditions of release to outpatient status, has occurred, the outpatient has been taken into custody within his residence and the search has been justified as being incidental to his arrest. However,

---

[7]The legal status of an outpatient from the CRC was raised, but left unanswered, in *Hacker* v. *Superior Court* (1968) 268 Cal.App.2d 387, 390 [73 Cal.Rptr. 907].

in this case Jasso was taken into custody at his car which was some 30 to 100 feet distant from his apartment. Even prior to *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the courts of this state had held that where the arrest takes place on the sidewalk or in an automobile parked on the street, the search of the dwelling may not be justified as being incidental to the arrest. (*People* v. *Henry* (1967) 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *People* v. *Cruz* (1964) 61 Cal.2d 861, 865-866 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Delaney* (1965) 239 Cal.App.2d 122, 123-124 [48 Cal.Rptr. 408]; *People* v. *Theobald* (1964) 231 Cal.App.2d 351, 357-358 [41 Cal.Rptr. 758].) In *People* v. *Burke* (1964) 61 Cal.2d 575, 579 [39 Cal.Rptr. 531, 394 P.2d 67], the court stated: "Generally, there can be no search of a house without a search warrant except as in *incident to a lawful arrest therein,* and probable cause to believe that an article sought is concealed in the house furnishes no justification for a search of that place without a warrant." (Italics added.)

The mere fact that Jasso shouted his wife's name in a loud voice as he was being apprehended cannot in the context of this case take it out of the operative ambit of this general rule. Jasso did not add any words of warning suggesting that contraband should be destroyed. It would appear to be a natural reaction of one being unexpectedly taken away to apprise his spouse of this fact. However, Agent Wiggenhorn testified that he thought Jasso's calling his wife's name might be a signal to his wife to get rid of evidence or alert any other addicts in the residence. So he immediately went to the apartment. This can only be classified as a suspicion. He further testified that as soon as he got to the door he neither observed nor sensed anything to corroborate his suspicions along these lines. Hence the suspicion was dispelled. He then mentally justified his entry and search upon the theory that Jasso was "a parolee" whose residence was subject to search without his consent and even without reasonable and probable cause for arrest. (See, e.g., *People* v. *Quilon* (1966) 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294]; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 208 [46 Cal.Rptr. 743]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 150 [40 Cal.Rptr. 100].)

█ The entry into the apartment and the search thereof upon this erroneous premise, and the seizure of the real evidence upon which the two criminal actions were based, were all illegal. The evidence, therefore, should have been suppressed upon the respective motions made in No. A-228553 and No. A-228982.

### III.

May this illegal search and seizure in No. A-228553 now be reached by

Jasso's petition for a writ of habeas corpus? It has been held that generally a writ of habeas corpus may not be employed to review a search and seizure question that could have been raised by way of review on appeal. (*In re Lessard* (1965) 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39], cert. denied, 372 U.S. 955 [9 L.Ed.2d 979, 83 S.Ct. 954].)[8] It has been intimated, however, that a writ of habeas corpus will lie "[i]f a crucial defense is withdrawn from the case through the failure of counsel to investigate carefully all defenses of fact and law" as that would constitute an inadequate representation by counsel. (*In re Beaty* (1966) 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817]; cf. *People* v. *Ibarra* (1963) 60 Cal.2d 460, 465 [34 Cal.Rptr. 863, 386 P.2d 487] [search and seizure question not properly raised].)

 Here appellate counsel urges that the writ of habeas corpus should be granted for lack of adequate legal representation in A-228553. Although trial counsel contended that the evidence should be suppressed for an alleged failure to comply with section 844 of the Penal Code (*People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]),[9] he made no effort to urge illegality of the search and seizure either upon the ground that outpatient status is not parolee status or that the search was not incidental to the arrest which occurred outside of the dwelling anywhere from 30 to 100 feet away. No review of the order denying defendant's motion to suppress was undertaken either by way of petitioning for a pretrial writ or by way of appeal from the then appealable order denying the motion for a new trial. A reasonably careful investigation of the law applicable to the facts here presented should have suggested these crucial defenses. Our state Supreme Court in its recent decision, *In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984], held that a defense counsel's failure to acquaint himself with available case materials and permitting his client to plead guilty in ignorance thereof constituted inadequate representation by counsel. Here, there were authoritative materials (statutory case law, and law review comments) which should have suggested contesting the trial court's assimilating an outpatient status to that of a parolee's status.[10] The cases holding it impermissible to justify a search of one's

---

[8]The effect of *Kaufman* v. *United States* (1969) 394 U.S. 217 [22 L.Ed.2d 227, 89 S.Ct. 1068] upon this case has not been determined, but we need not decide that question here. The gravamen of the habeas corpus petition in this case is directed primarily to Jasso's Sixth Amendment right to effective "assistance of counsel for his defense" (*In re Williams, infra,* 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984]) rather than his Fourth Amendment rights per se.

[9]Applied to an outpatient situation on April 18, 1968, in *People* v. *Meison* (1968) 261 Cal.App.2d 322, 324 [67 Cal.Rptr. 750].

[10]See, e.g., Penal Code section 2600; *Truchon* v. *Toomey* (1953) 116 Cal.App.2d 736 [254 P.2d 638, 36 A.L.R.2d 1230]; *Stephens* v. *Toomey* (1959) 51 Cal.2d 864

residence as being incidental to an arrest made on the sidewalk or in a car parked at the curb have been previously referred to. Under these circumstances, Jasso is entitled to a review of his conviction in No. A-228553 and of the order of February 8, 1968, denying his motion to suppress the real evidence under section 1538.5 of the Penal Code. However, he is not entitled to be released until disposition of this case by the trial court and that court's ascertaining whether Jasso is subject to detention on the commitment order that was outstanding on January 2, 1968, under a previous narcotics conviction.

### IV.

The interests of justice persuade us to permit a review also of the order denying the motion to suppress the balance of the real evidence introduced in No. A-228982. Section 1237, subdivision 1, of the Penal Code was amended in 1968 to read in the part pertinent to this case: "The commitment of a defendant for narcotics addiction shall be deemed to be a final judgment within the meaning of this section 90 days after such commitment." Following the statutory amendment, rule 31 (a), of the California Rules of Court was also amended taking away defendant's right to appeal from an order denying his motion for a new trial. (See: 56 Cal.2d 9 and 69 Cal.2d 1.) Were it not for these changes to the statute and the court rule, defendant even at this late date would have had the right to move for a new trial and appeal from an adverse ruling. Whether a sentence will eventually be imposed in this case is also presently uncertain. Furthermore, whether in view of the statutory change defendant would have a right of appeal from such a belated judgment of conviction (*People* v. *Gonzales* (1968) 68 Cal.2d 467, 469-471 [67 Cal.Rptr. 551, 439 P.2d 655], cert. denied, 393 U.S. 1055 [21 L.Ed.2d 696, 89 S.Ct. 693]), is also an open question, but one not ripe for determination at this time. ■■■ On the other hand, the legislative intent to grant a defendant a review of the search and seizure issue raised under section 1538.5 of the Penal Code even where a defendant has pleaded guilty is clear. The Legislature expressly provided in part: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." (Pen. Code, § 1538.5, subd. (m).)

The trial court, albeit prematurely, executed a certificate of probable cause indicating that its ruling on defendant's 1538.5 motion to suppress evidence raises a constitutional question. (Pen. Code, § 1237.5, subd. (b).)

[338 P.2d 182]; *People* v. *Banks* (1959) *supra*, 53 Cal.2d 370; Note (1953) 26 So.Cal. L.Rev. 425-434; Holland, *"Conviction" Defined* (1965) 40 State Bar J. 36 et seq.

In this anomalous situation, it appears appropriate to treat the notice of appeal filed May 16, 1968, from inter alia the "judgment of conviction" in this case (No. A-228982) and "order of May 7, 1968" made in the civil commitment proceedings (No. NDA-8728), as a premature notice of appeal from an order of commitment to the CRC made appealable after a lapse of 90 days by the 1968 amendment to section 1237, subdivision 1, of the Penal Code. (Rule 31 (a).)[11] When the new statute came into force, defendant's time for appeal under the old law had not expired. He could have moved for a new trial at any time prior to pronouncement of judgment and the period for appeal would have commenced from the order of denial.

We thus reach a review of the propriety of the ruling denying defendant's motion to suppress the real evidence arising out of the search and seizure previously determined to be illegal. The order denying suppression was erroneous and its nullification undermines the judgment of conviction.

## V.

We return to a review of the commitment order of April 25, 1968 (entered April 29, 1968) placing defendant in the CRC as a narcotic addict. We have already held that the order is properly before us for review.

In *People* v. *Murphy* (1969) *supra*, 70 Cal.2d 109, 114-115, it was held that matters going to the jurisdiction of the court to institute the narcotics addiction commitment proceedings may be inquired into on the appeal from the order of commitment made pursuant to section 3051 of the Welfare and Institutions Code. Section 3051 provides that these civil proceedings may be instituted "[u]pon conviction of a defendant for any crime in any superior court." In the proceeding, *In re Bevill* (1968) *supra*, 68 Cal.2d 854, 860, it was held that the words "When a person is convicted of any criminal offense" rendered a valid criminal conviction an indispensable jurisdictional requirement for a valid mentally disordered sex offender proceeding. Lacking a constitutionally valid criminal conviction, the court held the MDSO proceedings there in question to be a nullity. Parity of reasoning requires us to hold the civil narcotic addiction commitment proceedings in No. NDA-8728 invalid, since the criminal prosecutions upon which the civil proceeding was predicated have been found to be invalid.

[11]The second sentence of 31(a) reads: "A notice of appeal filed prior to the time prescribed therefor is premature but may, in the discretion of the reviewing court for good cause, be treated as filed immediately after the rendition of the judgment or the making of the order." (See 69 Cal.2d 1.)

Having determined the original order of commitment made April 25, 1968 (entered April 29, 1968) to be void, it becomes unnecessary to determine the validity of the order of May 7, 1968, made in No. NDA-8728, or whether the appeal from that order had been properly noticed by including it in the notice in No. A228982.

## VI.

In No. A-228982, the judgment (order of commitment) is reversed; appeals from orders and plea dismissed.

In No. A-228553, the writ of habeas corpus is denied, but the trial court is ordered to grant defendant's motions for a new trial and to suppress evidence under Penal Code section 1538.5.

In No. NDA-8728, the order of commitment is reversed; appeal from order of May 7, 1968, dismissed.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied December 30, 1969, and respondent's petition for a hearing by the Supreme Court was denied January 28, 1970.