[Civ. No. 21065. Third Dist. June 7, 1982.]

In re ALAN R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALAN R., Defendant and Appellant.

COUNSEL

Richard R. Johnson, under appointment by the Court of Appeal, and Johnson & Thompson for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Maria J. Fonseca, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Following denial of his motion to suppress (Welf. & Inst. Code, § 700.1), the minor, Alan R. (appellant), admitted the allegation in the petition charging possession of marijuana (Health & Saf. Code, § 11357, subd. (c)). The sole issue is whether the juvenile court properly denied his motion to suppress. We conclude it did and affirm the judgment.

In early 1980 appellant was placed on probation for burglary (Pen. Code, § 459). When he failed to comply with a probation condition that he make restitution, appellant was ordered to participate in the Shasta County Juvenile Hall work project for 10 days.

The work project is conducted during the day on Friday, Saturday, and Sunday. The project site is a partially fenced field adjacent to the juvenile hall. Apparently, most of the wards in the program live at home and have been ordered to participate as an alternative to juvenile hall commitment. However, wards who live at juvenile hall also participate.

In the morning of July 31, 1981, appellant reported to the work project site bringing with him a nylon duffle bag. Normally the juveniles left their belongings at a nearby garage. Cloy Cockrell, a supervisor, testified that the nylon duffle bag was "at all times" within approximately 20 feet of appellant. Later in the morning Cockrell received information from another juvenile, stipulated to be an unreliable source, that appellant was in possession of marijuana. After discussing the matter with her coworkers, Cockrell relayed this information by telephone to appellant's probation officer, Mr. Pontarolo. She told Pontarolo that

appellant had kept a bag near him all morning, which was "very unusual." Prior to the incident appellant had admitted to Pontarolo that he used marijuana and other drugs. In fact he had admitted using drugs "just a day or two before" when he had been involved in an automobile accident. Pontarolo believed a pattern of drug involvement was "starting to develop."

Pontarolo arrived at the worksite around noon. Without consulting appellant, Pontarolo picked up the nylon bag and proceeded to the garage area. Through the duffle bag's flimsy exterior he felt what he believed to be "other bags inside the duffle bag . . . like lid[s] of marijuana." Inside the garage Pontarolo unzipped the duffle bag and observed several baggies of marijuana. He then took appellant into custody.

■ As appellant correctly notes, a probationer retains many of his civil rights, including the protection of the constitutional guarantee against unreasonable searches and seizures. (*People* v. *Jasso* (1969) 2 Cal.App.3d 955, 963-964 [82 Cal.Rptr. 229]; *People* v. *Myers* (1972) 6 Cal.3d 811, 816 [100 Cal.Rptr. 612, 494 P.2d 684].) (A consent to search provision was not a condition of appellant's probation.) However, the protections afforded persons by the Fourth Amendment in a free society are not applied in the same manner to persons being held in lawful detention by the government, regardless of probationary status. In *Bell* v. *Wolfish* (1979) 441 U.S. 520 [60 L.Ed.2d 447, 99 S.Ct. 1861], the United States Supreme Court weighed the privacy interests of pretrial detainees against the institutional need for prison security and upheld against a Fourth Amendment challenge the practice of strip searching every inmate after he received a contact visit with a person from outside the institution. The court noted, in determining the reasonableness of such searches, that "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (*Bell* v. *Wolfish, supra*, 441 U.S. at p. 559 [60 L.Ed.2d at p. 481].) ■ The rule we gather from *Bell* is that the reasonableness of a search in a detention environment must be determined by balancing the need for the particular search against the invasion of personal rights that the search entails.

Appellant contends that juvenile hall authorities are bound by the traditional requirement of probable cause in conducting a search. However, case law demonstrates the contrary to be true. In respect to those who are lawfully detained, governmental authorities can conduct rou-

tine administrative searches without any "cause" at all as long as reasonable and justified by legitimate state interests. (*Bell* v. *Wolfish,. supra*, 441 U.S. 520 [60 L.Ed.2d 447]; see generally *In re Jordan* (1972) 7 Cal.3d 930 [103 Cal.Rptr. 849, 500 P.2d 873]; *In re Jordan* (1974) 12 Cal.3d 575 [116 Cal.Rptr. 371, 526 P.2d 523]; *In re Short* (1976) 55 Cal.App.3d 268 [127 Cal.Rptr. 498]; Pen. Code, § 2600.)

■ The physical characteristics of the juvenile hall work site differ markedly from the familiar image of a jail or juvenile hall facility: most obviously there are no physical barriers to prevent escape or flight. This is no doubt attributable to the fact that wards in the work program are not considered high security risks, thereby obviating the need for detention in a lockup facility or routine administrative searches. Nonetheless, it is clear that their court-ordered presence at the work site represents a temporary detention that brings about a necessary curtailment of many of the rights and privileges of freedom. As noted, the work site is adjacent to juvenile hall; the wards are required to spend the full day at the site and are supervised in the field by "Group Supervisors;" some of the participants are wards confined to the adjacent juvenile hall. Given these realities, a participant's reasonable expectation of privacy is necessarily of diminished scope.

Balanced against appellant's diminished expectation of privacy is the state's undeniable interest in keeping the juvenile hall facilities secure and free of contraband, drugs or weapons. Because wards from the juvenile hall are commingled with those who are participants in the work program only, the introduction of contraband into the juvenile hall is a real and substantial possibility. Thus, it is obvious that detention at the work site calls into play many of the exigencies inherent in other detention environments, such as certain pretrial holding facilities and minimum security prisons. The governmental interest in the security and order of the juvenile hall justifies a relaxed standard for the invasion of the ward's diminished privacy interest.

The record here indicates that Pontarolo opened the duffle bag in a nearby garage. We therefore assume the bag was then outside of defendant's "immediate control." (See *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) Under Fourth Amendment analysis, once a closed personal container has been reduced to the exclusive control of governmental agents there is no perceived exigency justifying a warrantless search. (See *United States* v. *Chadwick* (1977) 433 U.S.

1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841].) This rule, however, has no application to a detention environment, where the all too ubiquitous threats to order and security constitute a judicially recognized exigency that legitimizes warrantless searches of closed containers even if in the authorities' exclusive control. (See *Bell* v. *Wolfish, supra,* 441 U.S. at p. 557 [60 L.Ed.2d at p. 480].)

When the security interests in the instant case are compared to the minimal intrusion of the search into appellant's privacy, it is clear the search was reasonable.

The judgment is affirmed.

Regan, J., and Sparks, J., concurred.